# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1866.

53    9
203   584
53    9
34 SC 306

## The Commonwealth *ex rel.* The Attorney-General *versus* The Atlantic and Great Western Railway Company.[1]

1. Filing in the office of the secretary of the Commonwealth, the certificate of consolidation of certain railroad companies, under the Act of March 24th 1865, constituted the one company thus created a legal corporation in Pennsylvania.

2. In a quo warranto against such company, "*nul tiel record*" is well replied to a plea that the defendants became a corporation by contract of consolidation under said act.

3. It being proved that the certificate was deposited with the secretary of the Commonwealth in his office, the presumption is that he filed the same of record and that it remains of record there.

4. Under a rejoinder that there is such a record with a *prout palet per recordum*, upon inspection of the record and such proof, judgment will be entered for the defendants.

5. A mandamus will issue, if necessary, to the secretary to add the date of filing, and any other necessary act in the premises.

THIS was an information and suggestion in nature of quo warranto, filed December 1865, by the Attorney-General against The Atlantic and Great Western Railway Company, in the Supreme Court, Middle District.

The suggestion sets out that the defendant claims without any lawful warrant to have the franchises, &c., following, to wit:—

---

[1] This and the three following cases were argued at Wilkesbarre, at a special session, June 1866.

(9)

[Commonwealth *v.* Atlantic and Great Western Railway.]

To be a body politic and corporate by the name of the Atlantic and Great Western Railway Company.

To lease, operate and maintain, in conjunction with the Western Central Railroad Company of Pennsylvania, the Catawissa Railroad, extending from Milton, in Northumberland county, Pennsylvania, to its junction with the Little Schuylkill Railroad, in the county of Schuylkill.

To have, in conjunction with the Western Central Railroad Company of Pennsylvania, the corporate powers, &c., granted to the Catawissa Railroad Company.

The defendants, January 19th 1866, pleaded that:—

1. The Atlantic and Great Western Railway Company claim to be a body politic and corporate by virtue of a contract, agreement and act of consolidation and merger made August 19th 1865, between the Atlantic and Great Western Railway Company in New York; the Buffalo extension of the Atlantic and Great Western Railway Company—corporations created and operated under the laws of New York; the Atlantic and Great Western Railroad Company of Pennsylvania, a corporation created under the laws of Pennsylvania; and the Atlantic and Great Western Railroad Company, a corporation created and operated under the laws of Ohio: New York, Pennsylvania and Ohio being adjoining states, the laws whereof respectively authorize such consolidation, and the railroads of said companies forming a continuous line of railroad with each other and crossing the boundary line of New York, Pennsylvania and Ohio at the same point; the contract having been first duly submitted to and adopted by a vote of more than two-thirds of all the stockholders of each of said corporations; and that fact certified by the secretary of each of the same companies under the seals thereof, was on the 3d day of October, A. D. 1865, filed with the secretary of state of New York and Ohio respectively, and with the secretary of the Commonwealth of Pennsylvania, as provided by law; which said contract, &c., with said certificates, the defendants now here in court produce.

2. The railroad of the Atlantic and Great Western Railway Company being connected with the railroad of the Catawissa Railroad Company by the intervening railroad of the Philadelphia and Erie Railroad Company, they claim to lease, &c., the said Catawissa Railroad, and to have, &c., the corporate powers, &c., granted to the Catawissa Railroad Company under and by virtue of a contract and agreement made and entered into between the Atlantic and Great Western Railway Company, the Western Central Railroad Company and the Catawissa Railroad Company, dated the 1st day of November, A. D. 1865, which contract the said defendants now here in court produce, &c.

The Attorney-General craved oyer of the contract, agreement

and act of consolidation and merger and certificates mentioned in the defendants' first plea; and a contract between the corporations mentioned in the plea, with this preamble, was set forth:—

"*Whereas,* The line of railroad made and in the process of construction by the aforesaid corporation companies respectively, so unite as to form a continuous line for the passage of cars from the city of Buffalo and Salamanca, in the said state of New York, to the city of Dayton, in the said state of Ohio, crossing the boundary lines of the said several adjoining states of New York, Pennsylvania and Ohio, at one and the same point:"—the other material parts being as in the plea.

The Attorney-General replied that "there is no record of the said supposed contract, agreement and act of consolidation and merger in the first plea mentioned, remaining among the records of the Commonwealth, in the office of the secretary of the Commonwealth, at Harrisburg, &c."

The defendants demurred to the replication.

By the Act of March 24th 1867, § 1 (Pamph. L. 49), any railroad company organized under the laws of Pennsylvania and operating a railroad in whole in this state or partly within this and partly without this state, under the authority of this and of any adjoining state, may consolidate its capital stock, franchises, &c., with any other railroad company whenever such railroads form a continuous line with each other or by means of an intervening road: provided that the laws of the state of any such other railroad authorize the like consolidation.

By § 2, the directors of the several companies may enter into an agreement prescribing the terms of consolidation, the name of the new corporation, &c., with such other details as may be necessary to perfect the organization: the agreement to be submitted to the stockholders of each company called separately, for the purpose, due notice to be given by publication in a newspaper where the company has its principal office and also delivered to each stockholder or sent by mail, when his address is known, and if two-thirds of all the stockholders of each company shall be for adopting the agreement, this shall be certified by the respective companies under the corporate seal, and the agreement or a certified copy of it shall be filed in the office of the secretary of the Commonwealth, and a copy thereof certified by him under the seal of the Commonwealth, shall be evidence of the existence of the new corporation.

By § 3, upon perfecting the act of consolidation and filing it with the secretary of the Commonwealth, the several corporations shall be one under the name agreed on. The other sections relate to the powers and liabilities of the new corporation.

*Meredith,* Attorney-General, for Commonwealth.—The defend-

[Commonwealth *v.* Atlantic and Great Western Railway.]

ants by their first plea claim to be a corporation by virtue of an agreement of merger and consolidation made in pursuance of an Act of Assembly, and alleged to have been filed in the office of the secretary of the Commonwealth. The parties to the agreement are four railroad companies, two of them incorporated by the state of New York, one by Ohio and one by Pennsylvania.

To this plea the Attorney-General replies "*nul tiel record*," and the defendants demur to the replication. The question is thus raised whether the filing of the said agreement is matter of record.

The 2d section of the act referred to (Act of 24th of March 1865, Pamph. L. 49), provides that the agreement, or a certified copy thereof, shall be filed in the office of the secretary of the Commonwealth, and shall *from thence* be deemed and taken to be "the agreement and act of consolidation of the said companies," and a copy of said agreement and act of consolidation, duly certified by the secretary of the Commonwealth, under the seal thereof, shall be *evidence of the existence* of the said new corporation.

The 3d section provides that " upon the making and perfecting the agreement, &c., as provided, &c., *and filing the same*, or a copy, with the secretary of the Commonwealth as aforesaid, the several corporations parties thereto shall be deemed and taken to be one corporation, possessing within this Commonwealth all the rights, privileges and franchises, and subject to all the restrictions, disabilities and duties of each of such corporations so consolidated."

It will be observed that the filing of the agreement is a condition precedent to the existence of the corporation. The place of filing is the rolls office of the Commonwealth, where all the laws and other records of the state are filed and kept.

The creation of every corporation, whether by the legislature or the courts, appears somewhere of record, either in the secretary's office, or among the records of the courts authorized to grant charters.

There is no authority for supposing that the grant of a franchise by the sovereign power is not matter of record. It has always been so held in England : Doctor and Student, chap. 8, p. 31, 14th ed.

The king's grants are matters of public record, 2 Bl. Com. 346–48, and shall be tried by the king's writ or patent only, which is matter of record : Countess of Rutland's Case, 6 Rep. 53 a.

In this state it never seems to have been questioned that a grant of corporate privileges is a matter of record. No case is found in the books in which it has been doubted. The Act of 6th of April 1791 (Purd. Dig. tit. *Corporation*), authorizing the grant of char-

[Commonwealth *v.* Atlantic and Great Western Railway.]

ters in certain cases, by the Supreme Court, made it the duty of the governor to transmit the charter to the Master of the Rolls with an order endorsed, requiring him to enroll the same at the expense of the applicants; and *upon the enrolment thereof*, and not before, the persons associated became a corporation.

The office of Master of the Rolls was abolished by Act of 29th March 1809, and the powers and duties of that office were transferred to the secretary of the Commonwealth, so far as the same related to laws, resolutions, acts and proceedings of the legislature.

The secretary is required also by the constitution to keep a fair register of all the official acts and proceedings of the governor.

By Act of 4th of April 1792 he is required to collate with, and correct by the original rolls, the proof-sheets of the printed copies of the laws: Dunlop's Dig. 195. Every volume of the laws contains his certificate that he has collated with and corrected by the original rolls *on file* in his office, the proofs of the printed copies of the acts and resolutions therein contained.

It is plain, therefore, that all acts and resolutions of the legislature, and all official acts and proceedings of the governor, are matters of record. This of course includes letters patent issued to persons to whom franchises are granted by law.

In the case in hand the law expressly provides that the agreement authorized, or a certified copy of it, shall be filed in the office of the secretary of the Commonwealth. The filing is a condition precedent, and as much matter of record as the enrolment under the Act of 1791. When filed it becomes a law; and the filing or enrolment, which is the same thing, is the only evidence of its existence. "A copy of said agreement and Act of Consolidation, duly certified by the secretary of the Commonwealth, under the seal thereof, shall be evidence of the existence of the said new corporation." These are the very words of the act under which the defendants claim to be a corporation. The certified copy, under the seal of the Commonwealth, is a substitute for letters patent, which are always matter of record. If there is no record, there can be no corporation.

Secondly. The defendants having demurred to the replication, the court will consider the whole record. If the replication be bad, and a substantial fault be found in the *plea*, judgment must be given for the Commonwealth: 1 Saund. Pl. & Ev. 431.

The defendants, by their plea, claim to be a body politic and corporate, by virtue of the agreement therein recited, of which profert is made, and oyer has been had. The Commonwealth asks judgment on this the plea, on the following grounds:—

1. The 1st section of the Act of Assembly, in pursuance of which the agreement purports to have been made, is unintelligible.

2. It does not authorize contracts of merger between corpora-

tions of this state and those of other states. It allows railroad companies created by this state, on certain conditions, to make such contracts with railroad companies created by *any other state*. The plain meaning of the act is, that when the road or roads of a company or companies created by this state form a continuous line by connection with the road of a company created by another state, such companies may be consolidated. A company created by a *third* state cannot be a party to the contract; but the agreement here is made between one corporation of this state, two of New York and one of Ohio. The effect of it is to make our territory a mere thoroughfare for the benefit of the corporations of two other states, which was not intended. The act belongs to that class of statutes which are strictly construed: Packer *v.* S. & E. Railroad Co., 7 Harris 218; Penna. Railroad *v.* Canal Commissioners, 9 Id. 22; Commonwealth *v.* Erie & N. E. Railroad Co., 3 Casey 351.

3. The 1st section of the act provides that nothing therein " shall be taken to authorize the consolidation of any company or corporation of this Commonwealth with that of any other state whose laws shall not authorize the like consolidation."

It is not alleged in the plea that the laws of either of the states of Ohio or New York, " *authorize the like consolidation*," nor does it appear by the agreement. It must be presumed that they do not; otherwise, the fact so vital to the defendant's claim would have been shown or averred.

4. The act provides that the consolidation shall be made under certain conditions, provisions and restrictions. The agreement must be submitted to the stockholders of each company at a meeting thereof, called for the purpose of taking the same into consideration. It is required that due notice of the time and place of holding such meeting, and the object thereof, shall be given by written or printed notices, addressed to each of the persons in whose names the capital stock of the said company stands on the books thereof, and delivered to such persons respectively, or sent to them by mail, &c., and also by general notice published in some newspaper, &c.

It is not alleged by the pleas, nor does it otherwise appear, that the agreement was submitted to any meeting of stockholders called under the provisions of this act, and upon the notice required, except in the case of the A. & G. W. Company of Ohio. The plea avers simply that it was duly submitted to, and approved and adopted by a vote of more than two-thirds of all the votes of all the stockholders of each and every one of the said companies or corporations.

It is not sufficient to aver that a meeting of stockholders was held, in pursuance of due notice required by law, as in some of the certificates annexed to the agreement. What notice was given

[Commonwealth *v.* Atlantic and Great Western Railway.]

must be set out specially. It is for the court, and not for the defendants, to decide whether it was "due notice required by law:" Rex *v.* Blogden, 10 Mod. 239 ; Strata Marcella, 9 Rep. 28 a ; 2 Inst. 281 ; 12 Mod. 225 ; 1 Sid. 86.

5. The act applies to companies whose railroads are completed, and form a continuous line of railroad with each other, or by means of any intervening railroad.

It does not appear by the plea that the railroads of the several companies are completed ; the agreement, on the contrary, shows that the roads are only *in process of construction.*"

It recites as follows :—

" Whereas, the line of railroad made, and *in the process of construction,* by the aforesaid corporation companies respectively, so unite as to form a continuous line for the passage of cars, from the city of Buffalo and Salamanca, in the state of New York, to the city of Dayton, in the state of Ohio, crossing the boundary lines of the said several adjoining states of New York, Pennsylvania and Ohio, at one and the same point."

How the " Buffalo extension of the A. & G. W. Railway," a corporation of New York, authorized to make a railroad from Buffalo to Salamanca, can be a party to this agreement, the defendants may be able to explain. Their road, *when constructed,* will be *wholly* within the state of New York.

If they are embraced by the act, and are lawfully parties to this agreement, then it must be held to apply as well to all corporations similarly situated, incorporated by other states. If they are not within the act, then the agreement is not authorized by law, and the Commonwealth is entitled to judgment.

6. The agreement, instead of consolidating the capital stock of the several parties to it, creates a corporation with *a new capital stock* of thirty millions of dollars, for which there is no authority whatever.

7. The agreement is no evidence of a corporate existence under the act. The act expressly provides that " a *copy* of said agreement and act of consolidation, duly *certified by the secretary of the Commonwealth, under the seal thereof,* shall be evidence of the *existence* of said new corporation."

The plea makes profert of the original agreement, with the certificates of the secretaries of the four companies, that it was approved by their respective stockholders. There is no certificate of the secretary of the Commonwealth of its having been filed in the office, and until filed it cannot be " deemed and taken to be the agreement and act of consolidation of the said companies." It is therefore not only no evidence of the existence of the corporation, but for the purposes of this case, it is no evidence of anything.

[Commonwealth *v.* Atlantic and Great Western Railway.]

*G. Church* and *J. S. Black*, for defendants.—The only question in the cause arises on the pleadings, and is presented to the court. It is not a question of fact or of evidence. Defendants answer the demand of plaintiff by setting forth the wherefore of their claims to be a body politic and corporate, which by all sound rules of pleading and practice is there now upon the record in full, closing up with an averment of the last requisite of the Act of Assembly ; that the recited contract, agreement and act of consolidation duly certified, " was on the 3d day of October, A. D. 1865, filed with the secretary of state of the states of New York and Ohio respectively, and with the secretary of the Commonwealth of Pennsylvania, as authorized and provided by law." The plaintiff does not traverse this or any other fact pleaded. The averment of these facts is therefore to be taken as admitted. The replication is simply that now, " April 15th 1866, there is no record of the said supposed contract, agreement and act of consolidation and merger, * * remaining among the records of the Commonwealth in the office of the secretary of the Commonwealth at Harrisburg."

This reply if insufficient in law, defendants claim to be a waiver of the plaintiff's further pursuit of his action, and entitles them to the judgment they pray.

The Act of Assembly demands one thing, and the Attorney-General another. The 3d section of the act, Pamph. L. of 1865, p. 50, prescribes the time the consolidation shall take effect: " Upon the making and perfecting the agreement and act of consolidation as provided in the preceding section, and filing the same or a copy with the secretary of the Commonwealth as aforesaid, the several corporations parties thereto, shall be deemed and taken to be one corporation by the name provided in said agreement and act, possessing within this Commonwealth all the rights, privileges and franchises, and subject to all the restrictions, disabilities and duties of each of such corporations so consolidated."

It may be eminently proper, and undoubtedly is, for the secretary of the Commonwealth to enroll or record the agreement in his office, but it is not by the Act of Assembly made a point or duty, upon the performance of which the consolidation becomes effectual, or the corporation exists.

In the preceding section, the 2d, of the act under consideration, it is said : " And the agreement so adopted, or a certified copy thereof, shall be filed in the office of the secretary of the Commonwealth, and shall from thence be deemed and taken to be the agreement and act of consolidation of the said companies ; and a copy thereof duly certified by the secretary of the Commonwealth, under the seal thereof, shall be evidence of the exist-

ence of said corporation." This last was necessary, for it might be a copy of a copy merely, and not a copy of the original, and hence without special enactment would not be evidence. However, it is not made the exclusive evidence.

But, as already observed, we are not called upon to furnish evidence here now; *non constat*, but we have it. In pleading, a party is not required to set forth his evidence, but only the fact, as the legal result or effect of his evidence.

This replication by the plaintiff is not very dissimilar in effect to a demurrer by him to the plea, but is somewhat more to defendant's advantage. The proper filing is averred by defendants, and not traversed by plaintiff. The defendants occupy the position of a plaintiff setting forth his claim in general terms, which puts the onus on the other party to make the particular objections or traverse the same. If the particular objections made are immaterial in affecting the general claim, a demurrer thereto covers the whole case: 1 Chitty's Pl. 538, 700, ed. of 1837.

The plea here is sufficient in substance to establish defendants' warrant to be a body politic and corporate under the law. The agreement and contract after profert and oyer as in this case is a part of defendants' plea, and all the averments in either are to be considered as so pleaded *in hæc verba:* 1 Chitty's Pl. 468, 705; 1 Saund. 317.

The defendants deny that there is any substantial default in the plea or answer which can deprive them of the judgment they ask. The legal purport of every material fact is fully stated; that is to say, the parties to this act of consolidation were respectively corporations of the several states named, and as such were operated therein under the laws thereof respectively; that said states are adjoining states, and the laws thereof respectively authorize this act of consolidation; that the railroads of the several companies form a continuous line of railroad with each other for the passage of cars, and cross the boundary-line of the said respective states at one and the same point; that the contract was made on a given date; that it was duly submitted to the stockholders of each company separately, at meetings duly called and held for the purpose of taking the same into consideration, in pursuance of due notice of the time, place and object, given as provided for by law; that it was read and considered by said stockholders and a vote by ballot given by them thereon of more than two-thirds of all the votes of all the stockholders of each corporation for the adoption thereof; that this was certified thereon by the secretary of each of the several corporations under their respective seals; and all thereof filed with the secretary of state of the states of New York and Ohio respectively, and with the secretary of the Commonwealth of Pennsylvania, as

3 P. F. SMITH—2

[Commonwealth *v.* Atlantic and Great Western Railway.]

authorized and provided by law: thus, as it were, merging the old corporations or amalgamating them and forming a new one, and vesting in and transferring to this new organization all their franchises, and subjecting it to all their liabilities and inabilities.

Would not this plea or answer to plaintiff's writ upon traverse, and issue formed, enable defendants to prove to a jury all the facts necessary in law to entitle them to the verdict? If it would, there is then no substantial omission or default in the plea, and the judgment ought to be given for defendants.

According to the Act of Assembly the work of consolidation belongs exclusively to the several boards of directors, the stockholders, and the secretaries, respectively. All others are passive until the conversion is so complete that "All and singular the rights, privileges and franchises of each of said corporations * * and all the property, real, personal and mixed; and all debts due * * and other things in action belonging to each of such corporations, shall be taken and deemed to be transferred to and vested in such new corporation, without further act or deed:" §§ 2, 3 and 4.

There is no act required of the secretary of the Commonwealth precedent to the time these several already existent corporations "shall be deemed and taken to be" (not created) "one corporation by the name provided in said agreement:" § 3.

The analogies set up by plaintiff are not pertinent. It is not a new creation, or grant of franchises, in the sense claimed; but simply providing another form for operating those already exercised in another name and style. The chief questions discussed by him do not arise upon this record.

The authorities cited by plaintiff show emphatically that when the legislature have required an act to be done by the secretary of the Commonwealth, or an enrolment, as a condition precedent, they say so: Purd. Dig. 194–5, tit. *Corporation*, pl. 1, 2, 11, 628, 631, &c.; tit. *Land Office*, pl. 63, 64, 79, 80, 81, 85.

And when the legislature mean the simple act of the party shall give the right, or authorize the exercise of one, they use the appropriate language adopted here: Id., tit. *Justice*, pl. 28, 72, 73, 80, 92; Id., tit. *Mechanics' Lien*, pl. 4, 18, 20. Where notice may be necessary to give priority over others, or adversely affect innocent parties, the requirements may be otherwise; but that question has no application. So it is in same: tit. *Railroad*, pl. 15, 16, 49, 50, 52, 55. By the word *filed* is simply meant *deposited with* the secretary of the Commonwealth, in order to complete or consummate the consolidation.

The remaining objections offered by plaintiff result from a too technical view of the Act of Assembly; entirely dispelled by a general examination of the whole subject and provisions of the law. It is distinctly averred on this record that the laws of the

several states named authorize the agreement, and this not being traversed in the pleadings, the question is not before the court.

The public are not affected by and cannot take advantage of want of notice to stockholders being specifically set out. The *fact* material to be certified is that *two-thirds* of all the stock approved, which is now fully and clearly done. The *facts* are pleaded in full form. The evidence of the facts is not required by the rules of pleading: 1 Chitty's Pl. 244. The dry allegation of the fact without the circumstances constituting the evidence of it suffices: Id. 258.

The opinion of the court was delivered, June 28th 1866.

PER CURIAM.—This cause having been fully argued and considered, we are of opinion:—

1st. That the instrument called a certificate of consolidation of the Atlantic and Great Western Railway Company, dated 19th of August 1865, was a lawful and valid instrument for the purposes therein expressed, and upon being filed in the office of the secretary of the Commonwealth constituted the defendants a legal corporation in the state of Pennsylvania.

2d. That *nul tiel record* is well replied to the defendants' pleas, and the demurrers to the replication must be overruled. But the defendants have leave to rejoin, that there is such a record with a *prout patet recordum.*

3d. If in support of such rejoinder the defendant shall produce the contract, agreement and act of consolidation set forth in answer to the oyer craved by the Attorney-General, with evidence that the same was deposited with the secretary of state in his office on the 3d day of October 1865, the opinion of this court will be that the defendants have fully complied with the requirements of law in respect to said instrument; that it became then and there the duty of the secretary of the Commonwealth to file the same of record; that as against the Commonwealth the legal presumption must be, that the secretary performed his duty and filed the same of record, and that it has remained and still remains filed of record in his office, and judgment will accordingly be entered for the defendants upon inspection of the instrument and such proof. If in the opinion of counsel any endorsement of the date of filing by the secretary be necessary, a mandamus would lie to command him to add the appropriate date and to perform every other necessary act in the premises.