# Keller, Appellant, *v.* Riverton Consolidated Water Company.

*Corporations—Merger—Recording certificate of charter—Office of recorder of deeds.*

Where several corporations which have been regularly organized under the general corporation Act of April 29, 1874, P. L. 73, and have recorded their respective certificates of charter in the office of the recorder of deeds, have been merged and consolidated under the Act of May 29, 1901, P. L. 349, the certificate of merger of the new company need not be recorded in the office of the recorder of deeds.

302 KELLER, Appellant, v. RIVERTON·WATER CO.

*Corporations—Water companies—Eminent domain—Exhaustion' of power.*

A water company does not exhaust its right to condemn land by a single exercise of the power of eminent domain. It has the right to acquire, by purchase or condemnation, such additional land as it reasonably requires for the extension or enlargement of its plant necessary to enable it to discharge its duty of furnishing the public an adequate supply of water.

Where additional land condemned by a water company is adjacent to the company's existing plant, is marked off by easily visible and well-defined boundaries, and its adaptability for the use intended is obvious, the condemnation is not invalid, because it was not preceded by a preliminary entry and experimental survey, showing topography, grades, and the exact location of each proposed building.

*Courts—Judges—Prejudice—Previous employment.as counsel.*

A judge is not disqualified from sitting in a case involving the right of a merged corporation to condemn land, merely because some years previously he had been employed as counsel by one of the constituent corporations in other condemnation proceedings against the plaintiff.

Argued March 11, 1907.   Appeal, No. 9, March T., 1907, by plaintiff, from decree of C. P. Cumberland Co., March T., 1905, No. 1, dismissing bill in equity in case of M. R. Church Keller v. Riverton Consolidated Water Company.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Bill in equity for an injunction.   Before SADLER, P. J. The opinion of the Superior Court states the case.

*Error assigned* amongst others was decree of the court dismissing the bill.

*E. M. Biddle, Jr.*, with him *S. S. Rupp*, for appellant.—The defendant company was not authorized to do business : Guckert v. Hacke, 159 Pa. 303; Bank v. Crowell, 177 Pa. 313 ; Braddock Boro. v. Water Co., 189 Pa. 379 ; Mill Co. v. Gallatin, 10 York, 183.

The former taking by the Riverton Water Company, exhausted its power: McKay v. Water Co., 6 Pa. Dist. Rep. 364 ; Brigham v. R. R. Co., 83 Mass. 316 ; Neal v. R. R. Co., 2 Grant, 137 ; Lodge v. P., W. & B. R. R. Co., 8 Phila. 345.

There was no valid location and appropriation by defendant: Williamsport R. R. Co. v. R. R. Co., 141 Pa. 407; New Brighton, etc., R. R. Co. v. R. R. Co., 105 Pa. 13; Homestead St. Ry. Co. v. Ry. Co., 166 Pa. 162; P., H. & P. R. R. Co. v. Gorgas, 14 Pa. Dist. Rep. 827.

*F. E. Beltzhoover*, with him *J. H. Reiff* and *S. B. Sadler*, for appellee.—Under the act of 1901, the new corporation is complete and fully authorized to do business the moment it obtains its letters patent. The act of 1874 requires the certificate to be recorded in the recorder's office of the county. The act of 1901 does not require such recording: Com. v. Ry. Co., 53 Pa. 9; Rumsey v. R. R. Co., 203 Pa. 579; Robinson v. Ry. Co., 49 Pitts. L. J. 369; McClure v. Ry. Co., 90 Pa. 269.

The former taking by the Riverton Water Company did not exhaust the power: Ellmaker v. Buckley, 16 S. & R. 72; Trenton Cut-off R. R. Co. v. Ry. Co., 8 Pa. Dist. Rep. 549; Brown v. Corry, 43 Pa. 495; Palairet's App., 67 Pa. 479; Water Co. v. Troy, 200 Pa. 453; Brace v. Water Co., 49 Pitts. L. J. 169; Lehigh Coal & Nav. Co. v. Gas & Water Co., 6 Pa. Dist. Rep. 291; McKay v. Penna. Water Co., 6 Pa. Dist. Rep. 364.

So it has been held that land may be condemned where it becomes necessary for the extension of the works of the corporation: Schepp v. Reading, 2 Woodw. 460; Edgewood Water Co. v. Troy Water Co., 7 Pa. C. C. Rep. 476; Bell v. R. R. Co., 2 Pitts. L. J. 42; Sutton v. R. R. Co., 211 Pa. 554; McClinton v. Ry. Co., 66 Pa. 404; Getz's App., 10 W. N. C. 453; Fehr v. Schuylkill Nav. Co., 69 Pa. 161.

There was a valid location and appropriation by the defendant: Johnston v. Callery, 184 Pa. 146; Pittsburg, etc., Ry. Co. v. R. R. Co., 159 Pa. 331; R. R. Co. v. Porter, 29 Pa. 165; Roberts v. R. R. Co., 1 Phila. 262.

OPINION BY HEAD, J., October 7, 1907:

Although the assignments of error in this case number a score, they have been so grouped by the learned counsel for the appellant, that the consideration and determination of four questions will dispose of every material point raised by the assignments.

Prior to February, 1905, there existed, in the county of Cumberland, six separate corporations, each created for the purpose of supplying water to the public within the territory covered by their respective charters. Each of these companies had been regularly and lawfully created under the general act of 1874 and its supplements, and each had complied with every legislative requirement necessary to enable it to begin the work for which it had been created, and to exercise and enjoy the rights and franchises contemplated by the laws authorizing the formation of such corporations.

By an agreement, dated February 10, 1904, duly entered into in accordance with the provisions of the Act of May 29, 1901, P. L. 349, the six companies referred to were merged and consolidated into a new corporation named the Riverton Consolidated Water Company, the present defendant; and it is conceded that the merger proceedings were so conducted as to meet and satisfy every express direction and requirement of the said act. The defendant having determined, in 1905, that, in order to furnish an adequate supply of water to a rapidly growing community, it must enlarge its plant, attempted to secure from the plaintiff about one-half acre of land adjoining its works; but, being unable to agree with the owner, began proceedings to condemn the property. The plaintiff thereupon filed this bill to restrain the further prosecution of the condemnation proceedings. After final hearing the bill was dismissed and this appeal followed.

The first proposition urged upon us by the appellant is that the defendant was not legally authorized to transact any business because it had not caused to be recorded, in the recorder's office of Cumberland county, "its certificate of incorporation or merger." To this objection it ought to be sufficient to reply that the act of 1901 neither requires nor authorizes such a record. But it is argued that the act of 1901 is but a supplement to the general corporation act of 1874; that the two are in pari materia and should be construed together and therefore the provision of the latter act that " the said original certificate . . . . shall then be recorded in the office for the recording of deeds in and for the county, etc., and from thenceforth the subscribers, etc., . . . shall be a corporation," must be read into the former. The argument is not convincing. It

is exclusively the province of the legislature to determine and declare upon what conditions two or more corporations, created under its authority, may merge and consolidate. That body having, in the act of 1901, prescribed in detail the several conditions upon the happening of which " the said merger shall be deemed to have taken place, and the said corporations to be one corporation," the addition of other and different conditions by a court would be a rank usurpation of legislative power. Moreover, the injection, into the merger act, of the recording provision of the act of 1874 referred to, would result in substituting, for a statute which exhibits harmony in its several sections and expresses the legislative will in terms that are clear and intelligible, another, contradictory in its terms and characterized by confusion and obscurity.

In a merger proceeding under the act of 1901 there is no such certificate as is, by the act of 1874, required to be locally recorded. The former act expressly declares, in sec. 3, that upon the filing, in the office of the secretary of the commonwealth, of the merger agreement and the certificates mentioned in sec. 2, " the said merger shall be deemed to have taken place ; " and that such merger and consolidation shall be complete and the corporation ready to transact business when, but not until, it shall have obtained new letters patent and paid the required bonus into the state treasury. We are asked to amend this act, in which there is no grant of new powers or franchises by the state, so as to make it also declare that the merger shall not be deemed to have taken place and be complete, until the consolidated corporation shall have complied with a requirement contained in a different act of assembly, intended to apply only to such corporations as receive, with and as a part of their patent of creation, a gift of powers or franchises theretofore held by the state. In the latter cases the legislature deemed it wise that the public should have notice of the gift that had been made and hence " notice by record was required : " Guckert v. Hacke, 159 Pa. 303. In this and kindred cases the supreme court but enforced the clearly expressed legislative will. " The said original certificate . . . . shall then be recorded . . . . and from thenceforth the subscribers shall be a corporation," is the plain mandate of the act of 1874. The same loyal submission to the will of the legisla-

ture, when clearly expressed, that impelled the court, in those cases, to insist upon compliance with all that had been commanded, now prohibits us from demanding the performance of that which has not been commanded. Moreover, the act of 1901 was not a new venture by the legislature into territory previously unexplored and uncharted. As early as 1865 a statute was enacted (March 24, 1865, P. L. 49) authorizing the merger and consolidation of certain railroad companies. It prescribed the manner and terms in and upon which such merger could be effected and, as to these, the language of the act of 1901 has been taken bodily from the earlier one. In construing the act of 1865 the Supreme Court has held—Commonwealth v. Atlantic and Great Western Railway Co., 53 Pa. 9; Rumsey v. Railroad Co., 203 Pa. 579—that nothing more could be required of the consolidated corporation than performance of the several conditions specified in the act. We but adhere to the principle of these cases in holding that the failure of the defendant to record the merger agreement in the recorder's office of Cumberland county, created no obstacle to its exercise of all the powers theretofore vested in its constituent companies.

One of these companies, the Riverton Water Company, was incorporated in 1892 to supply water to the public at Riverton, in Cumberland county, and the period during which it was to exist and perform its corporate functions was without limitation as to time. It selected a site for its plant and works and, being unable to acquire it by purchase, secured it regularly through condemnation proceedings. In the second proposition now advanced the appellant contends that the one act of appropriation in 1893, by which the company acquired the property then sufficient to enable it to perform its corporate functions, completely exhausted its power in that important respect; so that it is now unable to secure, by the exercise of the right of eminent domain, any additional land no matter how essential such land may be to its further corporate existence, or how urgent the public demand for a greater supply of water.

An adequate supply of water is one of the prime necessities of human existence. To furnish such supply is not only a privilege to be enjoyed by a corporation created for that purpose, but a duty to be discharged of such serious obligation that the state expressly reserves the right and power, through

its courts, to compel the performance of it by direct coercion of the corporation. The discharge of its corporate duties by such a corporation is the consideration returned to the state for the gift of its franchises, and as long as the gift endures the corresponding obligation must be discharged. Reasonably, therefore, it must continue to possess and exercise, in its maturity, all of those powers with which the state, in its wisdom, saw fit to endow it at birth in order to enable it to attain the objects of its creation and continued existence. The grown man, equipped for his life's work, has not been shorn of any of the powers he possessed as a child, nor has he acquired any new ones, no matter how greatly he has developed his muscles and faculties in answer to the ever-increasing demands of his life and environment. So a corporation, whose useful activities are to continue through its entire existence, may find the legitimate demands made upon it multiply a hundredfold; it may see the means and instrumentalities, once adequate and then adopted, through that very growth of population the state desired to encourage, through the increased fertility of human invention and the march of progress generally, rendered wholly inadequate, ineffective, perhaps even obsolete. To discard the old means and adopt new and better ones, or to increase the effectiveness of those already in use by adding to their quantity or size, is not to change the objects of the corporate existence, to go outside the legitimate sphere of the corporate operations or to usurp any powers retained by the state or conferred by it upon other of its creatures. But a corporation failing to do these things could no longer discharge its obligations to the state; could show no reason for its continued existence. It would invite and deserve its own dissolution.

It is not to be presumed that the high right of eminent domain is conferred by the state either idly or gratuitously. The corporation possessing it is the agent of the state and may exercise the power, in working out the objects of its existence, as freely as the state itself could exercise it. When it appears, as it does in the present case, that the performance of the duties it owes to the public, requires a second exercise of a power expressly conferred on a corporation, it seems both anomalous and unreasonable to hold that such a power was exhausted by a single use of it. The conclusion we thus

reach from general reasoning is not forbidden by any adopted rule of public policy, does not contravene any line or letter of constitutional or statute law, has never been declared unsound by any decision of our courts. On the contrary, in Sutton v. Penna. R. R. Co., 211 Pa. 554, it is held that "Under the Act of March 17, 1869, P. L. 12, relating to the widening of rights of way of railroad companies, a single taking does not exhaust the power." There are many other cases, such as Schepp v. City of Reading, 2 Woodw. 460, Gas Co. v. Butler Water Co., 210 Pa. 177, in which, although the exact question now before us was neither raised nor decided, the line of reasoning adopted would seem to lead to and support the conclusion we have arrived at. We are not unmindful of the line of cases in which it is held that when a railroad company, for instance, has once exercised its power of location and adopted a route for its line, there is neither necessity nor authority for any further exercise of that power. In such a case, from the very nature of the power, a single exercise of it has completely satisfied the legislative intent in conferring it. Such a company is incorporated to construct and operate but a single railway between the terminal points designated. There is an indefinite number of routes that could be adopted between two such points. It would be clearly competent for the legislature to designate in the charter the location of the entire route between the terminal points. But by its general laws it has seen fit to give to each of such companies the privilege of writing into its own charter the location it will adopt, the route it will follow. When such power has been once exercised the resulting location becomes as fixed and determined as if originally incorporated in terms in the charter. If the company could thereafter change that location at pleasure, instead of exercising its charter right to adopt and use one route between its terminal points, it would be usurping a right never intended to be conferred, viz.: the right to select and control all possible routes between the same points. The distinction between such cases and the one before us we deem too obvious to warrant more extended comment. We therefore hold that the defendant company had the right to acquire, by purchase or condemnation, such additional land as it reasonably required for the extension or enlargement

of its plant necessary to enable it to discharge its duty of furnishing to the public an adequate supply of water.

Nor can we see any merit in the contention that, conceding the existence of the power to condemn, there was not, in this case, a valid exercise of that power.   The court below has properly found from the evidence that the necessity for the acquisition of the land existed, and that the piece selected was well adapted to meet the end aimed at.   The defendant first sought to acquire it by purchase, and failing in that the directors of the company, by proper and formal action, authorized the institution of condemnation proceedings, which were carried on in the usual way prescribed by law.   The property sought lay immediately alongside that already owned by the company and occupied by its plant.   It was marked off by easily visible and well-defined boundaries.   Its physical features were open to the eye of every officer of the company, and its adaptability for the use intended could be readily determined by such officers.   To make a preliminary entry on such a plot of ground, an experimental survey, showing topography, grades, the exact location of each proposed building, etc., such as would be made by a railroad company before determining upon the feasibility of a route across country between distant points, would be so wholly useless that neither the law of reason nor any reasonable law could require it.

Finally, we are asked to reverse this decree because the president judge of the court of common pleas of Cumberland county refused the request, made by the appellant, that he decline to hear and dispose of this case, and that he call in some other judge for that purpose.   This request was based on the fact that some years ago the presiding judge had been of counsel for the Riverton Water Company, and assisted in conducting the proceeding by which that company had secured, from the present plaintiff, the site for its original plant.   That proceeding had long since been fully finished and ended.   Neither the propriety nor soundness of the conclusion there reached was in any way involved in the present case.   When a judge has been duly elected and commissioned, the law imposes on him the duty of hearing and disposing of the litigated questions that may arise in his jurisdiction, unless some cause to the contrary, recognized by law as sufficient, exists.   As

long as the bench must be recruited from the ranks of the bar, we think it would be hypercritical to insist that no judge, actuated by a proper delicacy of feeling, should hear a cause between parties to one of whom he had at some time rendered professional assistance.   However much the learned trial judge might have welcomed a proper avenue of escape from the hearing of a cause that demanded the expenditure of much time and labor, we are unable to say that his refusal of the appellant's request left her any just ground of complaint.   Being unable to discover any reversible error in the entire record, this appeal must be dismissed at the costs of the appellant.

Decree affirmed.