## Pennsylvania Schuylkill Valley R. R., Appellant, v. Schuylkill Navigation Co. and the Philadelphia & Reading R. R.

*Railroads—Eminent domain—Condemnation of land already used for public purpose.*

On a bill in equity by one railroad company against another to restrain the latter from obstructing the former in its efforts to take a portion of the latter's land, it appeared that plaintiff had a single track railroad, and was not at the time engaged in laying a double track, nor did the bill aver a necessity for the occupancy of the land for that purpose, nor did the evidence show such necessity. It also appeared that the occupancy of the land was important to the defendant for the proper exercise of its corporate and public powers and duties. *Held,* that the bill should be dismissed without prejudice to the right of the plaintiff to renew its effort under the right of eminent domain, at such time as such effort should be deemed necessary, for the purpose of making a continuous double track railroad upon so much land as might be necessary for the purpose.

Argued March 5, 1895. Appeal, No. 222, July T., 1894, by plaintiff, from decree of C. P. Berks Co., Equity Docket, 1885, No. 358, dismissing bill in equity. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed with modified decree.

Bill in equity for an injunction to restrain defendant from obstructing plaintiff in its efforts to take a portion of defendants' land.

The case was referred to Henry C. G. Reber, as master, who reported in favor of plaintiff.

Exceptions to the master's report were sustained by the court, ENDLICH, J., filing an opinion, which was in part as follows:

"The tract of land over which the plaintiff seeks a right of way consists of a narrow strip between the western building line of River street and the Schuylkill canal. Of this strip, it is the easterly ten feet, that is to say, the front on River street to the depth of ten feet, that the plaintiff seeks to appropriate, for the purpose of double tracking its railroad—at present a single-track railroad on said River street. The land belongs to the Schuylkill Navigation Co., one of the defendants, but is

leased, together with the canal itself, to the P. & R. R. R. Co., the other defendant.

"The railroad of the latter is located on River street, east of the plaintiff's railroad, so that the latter cuts off the P. & R. R. R. Co.'s tracks from its leased property along the canal, as well as from access to manufacturing establishments now erected or that may be hereafter erected north of the property in question and west of plaintiff's railroad.

"For the purpose of reaching both, the P. & R. R. R. Co., some years ago and before the plaintiff's road was built, undertook to construct a branch over that portion of River street that lay to the west, on to its leased property and running northward upon the same. Under an injunction then obtained, the plaintiff tore up said branch and proceeded to build its road. In that litigation (No. 341 Eq. D., 1884) it was determined (1) that the plaintiff had the right to do the latter, 157 Pa. 42, and (2) that the P. & R. R. R. Co. had bona fide undertaken to build the branch referred to and had the right to do so, subject to the right of the plaintiff to cross it on River street: 160 Pa. 232.

"We have, then, the settled and adjudicated fact that part of the strip between River street and the canal is, strictly speaking and rightfully, dedicated to railroad uses; i. e., so much of it as is needful for the P. & R. R. R. Co. to acquire access to the property and a northern outlet over it. The circumstance that, during the pendency of an injunction restraining the connection of the branch with the main track, its construction has been suspended for a period of some ten years (for all this litigation is of very ancient birth) is neither here nor there. Of course, the branch would not be built while its use was impossible for want of a connection; and its interdiction having been at the instance of the plaintiff, it does not lie in the latter's mouth to set up against the P. & R. R. R. Co. a fact which legitimately resulted from obedience to the decree obtained against it. That company, however, is also the lessee of the canal and all its property, and the question, therefore, further arises, what relation does the land sought to be appropriated sustain to it as such?

"It is among the undisputed facts of the case that the storage of materials for the maintenance and repairs of the canal and

578 PENNA., ETC., R. R., Appellant, *v.* SCH. NAV. CO. et al.

Opinion of Court below.                         [167 Pa.

its works has always required and still requires part of the land; that the latter affords the only wharf facilities along the canal within the city limits north of Franklin street and south of the Lebanon Valley R. R. bridge; that, at the northern part of the tract, the diminution of its width by ten feet, by the allowance of the right of way claimed by plaintiff, will make the P. & R. R. R. Co.'s branch road impossible, except by encroaching upon the canal and its works; and that, in the construction of a necessary retaining wall for its track, the plaintiff would itself have to encroach upon the guard gate.

" It is true that in the storage of materials every foot of space afforded by the whole track has never been taken up, and that, by changing the arrangement and disposition of the defendant's property so as to meet the desires of the plaintiff, the former will be able to get on without the ten feet coveted by the latter. But substantially the same arguments were urged, with greater apparent reason than here, in Pittsb. J. R. R. Co.'s App., supra, and met with no favor at the hands of the lower or Supreme Court. 'Every reasonable intendment,' says PAXSON, J., quoting L. S., etc., R. Co. v. N. Y., etc., R. Co., 8 Fed. R. 858, ' must be taken in favor of the primary rights . . . . at the point of the alleged conflict. No actual encroachment upon these rights can be sanctioned or allowed, and in measuring their extent there must be a liberal consideration of the future, as well as the existing necessities . . . . the use of the existing tracks, the construction of additional ones, the convenient storage of its freight at all seasons, and the unembarrassed transaction of all its business.' In other words, the question whether property held by one quasi-public corporation is necessary, in the sense in which ' necessity ' exempts it from condemnation for the use of another, does not depend upon whether or not it contains so and so many square feet more than the owner could, if put to it, manage to get along with, or whether a rearrangement of its works in this or that particular would admit, with greater concentration, of equal efficiency. I do not conceive that the use which any property owner may choose to make of his own is to be thus supervised and interfered with by another.

" The question is whether the property, as it is, bears such a relation to the business in which the owner is engaged, in view of its past and present condition, and its future probabilities,

that the integrity of the property is apparently involved in the right of untrammeled, economical and profitable management and development of the same. If so, it is 'necessary.' It may very well be that those portions of this tract, which the defendants have permitted to be occupied by a gristmill and a glass factory could not be said by them wholly to fall within this description. But that circumstance cannot be controlling, because a right of way over that portion would be useless to plaintiff without a similar and continuous right over the remainder of the tract. The space, however, needful for the construction of the P. & R. R. R. Co.'s branch to the north, and the works that would be encroached upon by moving that branch ten feet to the westward, and by the construction of the plaintiff's track and retaining wall, certainly are 'necessary' to the lawful business of the one or the other of the defendants, or of both; and so, in any proper view, is all of the property that can be used for wharfage purposes. Whether, in any of the particulars in which these uses would be interfered with by plaintiff's proposed appropriation, results equally advantageous to the defendants could be achieved in some other way than that which defendants have laid out for themselves is irrelevant. *Prior in tempore, potior in jure.* . . .

" For the reason stated, and upon the basis of facts reported by the learned master, I am unable to agree with his conclusion therefrom that the property sought to be appropriated by the plaintiff is not necessary for the defendants' business and not devoted to a public use. I think that, for the purposes of this case, it is to be treated as both the one and the other. Now, what is the ' necessity ' that impels the plaintiff to ask for it?

" The plaintiff constructed the single track of which its road on River street consists between the P. & R. R. R. Co.'s track on the east and the strip of land controlled by the same company on the west. It now desires to add, beside the first, a second track, which the master finds is a physicial impossibility, unless it is permitted to place that track upon defendant's property. The right to build a double track is implied in the right to build a railroad: R. R. Co. v. Speer, 59 Pa. 325, 335, per AGNEW, J., and it is perhaps conceivable that the exercise of that right may, in certain circumstances and localities, be so indispensable to the exercise of the franchise itself, that the

580 PENNA., ETC., R. R., Appellant, *v.* SCH. NAV. CO. et al.

Opinion of Court below.                    [167 Pa.

occupancy, for that purpose, of property already held by another quasi public corporation may be permissible. But unless it is so, it is a mere incident to the right to build and operate a railroad, and the company 'cannot pursue the incident to the destruction of the rights of other parties:' Sharon Ry. Co.'s App., 122 Pa. 545. Hence it must, at all events, be incumbent upon the company claiming the right to double track with such effect to show, not only the existence of a condition making a second track at the point in question indispensable to the enjoyment of the franchise, but also the fact that the requirement of exempted property for its construction is one that results from circumstances not of the company's creation, but in the nature of things unavoidable. Otherwise no 'necessity' warranting the encroachment has been made out. There is, however, in this case nothing to demonstrate a controlling need for a double track in this locality. The plaintiff's road does not appear to be anything but a single-track road, for a distance of at least thirty miles on either side of Reading. Doubtless it has sidings at proper points along its course; but there is nothing to show the peculiar propriety of a siding at this point.

"As has been stated, the P. & R. R. R. Co. is about to construct a branch upon the very ground to be occupied by plaintiff's track. Under Const. 1874, art. XVIII. sec. 1, plaintiff will have the right to connect with the same and to have its passengers, tonnage and cars, loaded and empty, transported over the same without delay or discrimination. Unless some special reason be shown why the stretch which the plaintiff will be thus entitled to use must be under its own control, this provision removes the last vestige of a pretense that there is a necessity for the construction of a double track at this point. To be sure, it is suggested that the same provision will enable the P. & R. R. R. Co. to have the same benefit from plaintiff's track, if constructed as desired, as from the branch it proposes to build, and that, therefore, there is no occasion for the latter. The trouble about this suggestion is that the intention and right of the P. & R. R. R. Co. to build the branch are res adjudicata; that the property belongs to it; and that it would be somewhat out of the ordinary, in order to insure plaintiff's right to use it in common with its owner, to take it away from the latter and give it to the former, reserving to the owner a

mere right to pass over it.   The more obvious thing is to leave it to the owner, reserving a right to pass over it in favor of the plaintiff.

"But, suppose there is a need for a second track.   Whence comes the necessity for placing it on defendants' property? There is no finding in this case, and I have discovered no testimony warranting a finding, that the plaintiff's location of its road where it is was the only possible one.   If it was not—if there was any practicable mode of locating it so as to allow of double-tracking without encroaching upon defendants' property, into which the question of convenience and economy to the plaintiff does not enter, then the necessity which it now relies on is one of its own creation—that is to say, no necessity at all that will justify the encroachment.   'Whenever the existence of any fact is necessary in order that a party may make out his case or establish a defense, the burden is on such party to show the existence of such fact:' Willett v. Rich, 142 Mass. 356, 357, per MORTON, C. J.   The burden upon the plaintiff, in every case, is co-extensive with the legal proposition upon which his case rests, and therefore applies to every fact which is essential to or necessarily involved in that proposition: Wilder v. Cowles, 100 Mass. 487, 490.   Nor can he, of course, have the benefit of an unproved fact as if it had been proven : Pease v. Cole, 53 Conn. 53.   It follows that the plaintiff, not having shown the existence of a necessity such as would alone justify a seizure of defendants' property under the right of eminent domain, has not made out a case entitling it to the decree prayed for, and that, therefore, its bill must be dismissed."

The court entered a decree dismissing the bill.

*Error assigned* was decree as above.

*Cyrus G. Derr,* for appellant.—Lands belonging to a railroad company, not in actual use or necessary to the proper exercise if its franchise, may be taken by another railroad company under the power of eminent domain as the ordinary lands of individuals may be taken: 1 Wood on Railroad Law, 684; Baltimore etc. R. R. v. P. W. & Kentucky R. R., 17 W. Va. 812; North Carolina etc. R. R. v. Carolina Cent. R. R., 83 N.

C. 489; Alexander etc. Ry. v. R. R., 10 Am. & Eng. R. R. Cases, 32; Norristown R. R. Co.'s App., 2 Walker, 291.

*George F. Baer*, for appellees, cited: Penna. Schuyl. Val. R. R. v. Phila. & Reading R. R. Co., 160 Pa. 232; Penna. R. R. Co.'s App., 93 Pa. 150; Duncan v. Penna. R. R., 94 Pa. 438; Pitts., Va. & Ch. Ry. v. Pitts. C. & S. L. R. R., 159 Pa. 331.

PER CURIAM, April 29, 1895:

The bill in this case was filed more than ten years ago. The plaintiff was not then engaged in laying a second or double track along the line of its railroad, nor does the bill aver a necessity for the occupancy of the land in controversy for that purpose. The learned judge of the court below held that no such necessity was alleged in the pleadings or made to appear in the evidence. He further held that the occupancy of the land was important to the defendants, in order to the proper exercise of their corporate powers and privileges, upon the facts as then presented.

We are not disposed to disturb the decree resting on these conclusions further than to make the following modification:

The decree is modified by adding thereto the words " without prejudice to the right of the plaintiff to renew its effort to enter, under the right of eminent domain, at such time as such entry shall be deemed necessary for the purpose of making a continuous double track through the city of Reading, upon so much land as may be necessary for the purpose."

As so modified the decree is affirmed.