State Bank of Pittsburg *v.* Williams, Appellant. Same *v.* Horigan, Appellant. Same *v.* Herb, Appellant. Same *v.* Nichols, Appellant. Same *v.* Espy, Appellant.

Argued Oct. 22, 1906. Appeals, Nos. 7, 8, 9, 10 and 11, Oct T., 1906, by defendant, from order of C. P. No. 3, Allegheny Co., Feb. T., 1905, No. 438, etc., making absolute rule for judgment for want of a sufficient affidavit of defense in case of State Bank of Pittsburg, in the hands of John F. Steel, Receiver, v. T. J. Williams and others. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

OPINION BY MR. JUSTICE ELKIN, January 7, 1907:

For reasons given in State Bank of Pittsburg v. Kirk, ante, p. 452, judgment in these cases is affirmed.

---

Moore, Appellant, *v.* Chartiers Valley Water Company.

*Corporations—Water companies—Lease—Act of June 26, 1895, P. L.* 369.
A water company organized under the Act of April 29, 1874, P. L. 73, may lease its property to another water company organized under the same act.

*Statutes—Construction of statutes—Title to act—Act susceptible of two constructions.*
The title of an act is part of the act and aids, if needs be, in its construction.
Where the words of a statute are susceptible of two constructions one of which will lead to an absurdity and the other not, the latter should be adopted.

Argued Oct. 24, 1906. Appeal, No. 73, Oct. T., 1906, by plaintiff, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1904, No. 1,093, dismissing bill in equity in case of Harry Moore v. Chartiers Valley Water Company, South Pittsburg

458 MOORE, Appellant, *v.* CHARTIERS VAL. WATER CO.

Water Company et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

FRAZER, P. J., filed the following opinion :

The purpose of this bill was to restrain the Chartiers Valley Water Company from leasing its property, franchises, etc., to the South Pittsburg Water Company, and also to declare void such lease if one had been executed.

From the bill, answer and proofs we find the following facts :

1. The Chartiers Valley Water Company is a corporation of Pennsylvania organized and existing under the corporation act of April 29, 1874, and its supplements, its articles of association having been acknowledged July 27, 1896, approved by the governor and enrolled in the office of the secretary of the commonwealth July 30, 1896, and recorded in the recorder's office of Allegheny county February 5, 1897. As set forth in its articles of association, the corporation was formed " for the purpose of the supply of water to the public, or the supply, storage and transportation of water and water power for commercial and manufacturing purposes within the district lying South and West of the Ohio and Monongahela Rivers within the County of Allegheny, and outside the present limits of the City of Pittsburgh," and its business was to be transacted in the city of Pittsburg. The present capital stock of the company is 20,000 shares of the par value of $50.00 each, the individuals named as defendants herein being the officers and directors of the company, since August 19, 1904. Subsequent to its organization the company erected a waterworks, laid pipe, and until the execution of the lease hereinafter referred to supplied water to the public within the district mentioned in its charter.

2. The South Pittsburg Water Company is also a corporation of the state of Pennsylvania organized and existing under the corporation act of April 29, 1874, and its supplements, its articles of association having been acknowledged June 2, 1904, approved by the governor July 14, 1904, and enrolled in the office of the secretary of the commonwealth July 15, 1904, and recorded in the recorder's office of Allegheny county Au-

gust 1, 1904. As set forth in the articles of association the corporation was formed " for the purpose of the supply of water to the public, and its location of territory of supply is within the Borough of Bridgeville in the County of Allegheny and State of Pennsylvania." The corporation subsequently acquired franchises empowering it to supply water to the public in all the municipal districts within which water was formerly supplied to the public by its codefendant, the Chartiers Valley Water Company. The corporation was formed for the purpose of taking over under lease the franchises and property of the Chartiers Valley Water Company and operating the same. Its capital stock is $3,000,000.

3. Previous to the incorporation of the South Pittsburg Water Company its promoters and organizers submitted a proposition to the stockholders of the Chartiers Valley Water Company providing for a lease of the latter company's franchises and plant for the term of 999 years upon the following terms : The payment by the South Pittsburg Water Company of the floating indebtedness of the Chartiers company, amounting to about $125,000; the payment of the cost of a new pump at that time being erected by the Chartiers company; the assuming and paying of the bonded indebtedness of the Chartiers company of $1,000,000.; the payment of an annual rental to the company of $12,500, and it was further proposed to issue to the stockholders of the Chartiers company in lieu of their stock in that company stock of the South Pittsburg Water Company as follows: Twenty-five per cent of such holdings in five per cent guaranteed preferred stock, and seventy-five per cent in common stock.

4. At an adjourned meeting of the stockholders of the Chartiers Valley Water Company, held August 19, 1904, the same having been continued by successive adjournments from an earlier date, the stockholders of the company voted upon the proposition to lease its property to the South Pittsburg Water Company, referred to in the preceding finding, which proposition was adopted and approved, 16,948 shares voting in favor of the same, and 1,277 opposing the lease; 1,775 shares were not represented or did not vote. After the adjournment of the stockholders' meeting, accepting the proposition of the South Pittsburg Water Company, the directors

of the Chartiers Valley Water Company met and by a resolution unanimously adopted, authorized the execution and delivery of a lease of its property and franchises; pursuant to the action of the stockholders and directors of the company the officers thereof on the same date executed and delivered unto the South Pittsburg Water Company such lease, which company thereupon entered into possession of the demised property and has since that time exercised the franchises of the Chartiers Valley Water Company and operated its plant.

5. Plaintiffs are and were prior to August 19, 1904, owners of stock in the Chartiers Valley Water Company.

6. Harry Moore, one of the plaintiffs, from time to time as a director of the Chartiers Valley Water Company voted and protested against the execution of the lease of its franchises to the South Pittsburg Water Company, and at the stockholders' meeting of August, 1904, protested and voted against the authorization of the lease. His term as a director of the company having expired previous to August 19, 1904, he did not take part in the directors' meeting of that date which authorized the execution of the lease. Previous to the adjournment of the stockholders' meeting of August 19, he gave notice to those present of his intention to file a bill in equity to enjoin the execution of the lease, and as a result of such notice the bill in this case was filed August 27, 1904.

7. Under date of August 25, 1904, Robinson Brothers, acting as agents for the promoters of the South Pittsburg Water Company in procuring the lease now in question, mailed to the stockholders of the Chartiers Valley Water Company a circular letter in which the stockholders were notified that all stock in the Chartiers Valley Water Company not exchanged within fifteen days would " only be received on such terms as may then be made."

CONCLUSIONS OF LAW.

1. There being no evidence tending to show the use of improper means to induce the execution of the lease in question, or that its terms are unconscionable, the sole question for determination is the power of the Chartiers company to lease its plant to another corporation. If it has that power it must be conferred by the Act of June 26, 1895, P. L. 369, entitled " A supplement to an Act, entitled ' An Act to provide for the

incorporation and regulation of certain corporations,' approved the twenty-ninth day of April, Anno Domini one thousand eight hundred and seventy-four, further amending the twelfth section thereof, so as to permit corporations organized thereunder, either for the purpose of carrying on any manufacturing business or for the supply of water, or for the manufacture or supplying of light, to purchase bonds or stock of other corporations of the same character, or to guarantee the payment· of interest and principal of such bonds, or either principal or interest, or to lease and operate corporate property." The portion of the act applicable to this case and upon which the power to make the lease complained of depends, reads as follows : " It shall and may be lawful for any company, organized under the provisions of this act, either for the purpose of carrying on any manufacturing business or for supply of water for manufacturing and supplying light, of this Commonweath or elsewhere to subscribe for, take, purchase, hold and dispose of the bonds or stock in any company of the same character incorporated under the provisions of this act or its supplements, or guarantee the payment of said bonds and the interest thereon, or either principal or interest, or to enter into contracts for the use or lease of the corporate property, real, personal or mixed of such company, upon such terms as may be agreed upon with the company or companies owning the same, and to run, use and operate such property in accordance with such contract or lease."

Both the Chartiers Water Company and the South Pittsburg Water Company are organized under the act of 1874 for the purpose of supplying water to the public. They are corporations " of the same character." Do corporations of their character come within the provisions of the act ? It will be noticed there is a difference between the words used in the title of the act of 1895 and those used in the body. In the title, which is a part of the act, and aids if needs be in its construction, Halderman's Appeal, 104 Pa. 251, the act is made to apply to three classes of corporations : (a) for the purpose of carrying on any manufacturing business, (b) for the supply of water and (c) for the manufacture or supplying of light, while the body of the act, plaintiff contends, applies to but two classes, those organized for the purpose of carrying

on any manufacturing business, and those organized to supply water for manufacturing and supplying light. It seems to us plaintiff's contention is not well founded. To give the act the construction contended for by plaintiff would be to limit its provisions to one class of corporation, viz. : those organized for manufacturing purposes, as there is no authority in the act of 1874 for the creation of corporations to " supply water for manufacturing and supplying light." The legislature certainly intended all provisions of the act to have effect, and the language used should be construed with that end in view. A rule of construction is that where the words of a statute are susceptible of two constructions one of which will lead to an absurdity, the other not, the latter should be adopted, though it be a liberal instead of a literal construction. Applying this rule to the act of 1895, its entire provisions can be given effect and the body made to conform with the title by reading into the body the word " or " immediately before the words " for manufacturing and supplying light." If the laws of this commonwealth provided for the creation of a class of corporations " to supply water for manufacturing and supplying light," we should hold the language used in the body of the act should prevail and have effect in preference to that employed in the title. There being, however, no provision in our laws for the organization of corporations for that purpose we are clearly of the opinion the intention of the legislature as indicated by the title of the act was to confer upon manufacturing companies, water companies and light companies the power to lease their plants to other corporations of the same class; that intention being manifest, for the purpose of giving the act full effect and preventing a portion of its provisions from being meaningless the word " or " should be supplied as we have above indicated. This, we think, can be done without doing violence to any rule of construction.

2. In accordance with the conclusion reached above it follows that the Chartiers Water Company had the right to lease its plant, etc., to the South Pittsburg Water Company. Plaintiff's bill should therefore be dismissed.

Let a decree be drawn accordingly.

*Error assigned* was decree dismissing the bill.

*J. Rodgers McCreery*, for appellant.—A corporation can in no case make a lease, the entire rental and consideration for which does not pass to it in a corporate capacity; nor upon terms which require a stockholder to exchange his stock in lessor corporation for stock in lessee corporation in order to obtain the entire cÒnsideration for and benefit of the lease: Lauman v. Lebanon Valley R. R. Co., 30 Pa. 42; Titus v. Catawissa R. R. Co., 5 Phila. 172.

It is a well-established principle that no quasi public corporation has an implied right to sell or lease its franchises, or such part of its property as will disable it from performing its corporate duties: Susquehanna Canal Company v. Bonham, 9 W. & S. 27; Johnson Company v. Miller, 174 Pa. 605; Commonwealth v. Punxsutawney Water Company, 197 Pa. 569; Stewart's App., 56 Pa. 413; Com. v. Erie, etc., R. R. Co., 27 Pa. 339; Com. v. Moorhead, 7 Pa. C. C. Rep. 513; Com. v. Light & Power Co., 145 Pa. 105.

*Geo. B. Gordon*, with him *Wm. Watson Smith* and *Lyon, McKee & Mitchell*, for appellee, referred to: Deddrick v. Wood, 15 Pa. 9; Penna. R. R. Co. v. Riblet, 66 Pa. 164; Perkins v. Phila., 156 Pa. 554; Lewis' Sutherland Interpretation of Statutes, ed. 1904, sec. 339; Pinkerton v. Traction Co., 193 Pa. 229.

PER CURIAM, January 7, 1907:

There being a manifest incongruity in the language of the act, the learned judge interpreted it in accordance with the general intent as indicated in the title. The decree is therefore affirmed on the opinion of the court below.

---

# Given, Appellant, v. Sands.

*Trusts and trustees—Deed—Equity.*

The husband of a grantee in a deed wrote a letter to the grantor immediately upon the delivery of the deed to the effect that he understood that he, the writer, was to look after the property to pay the taxes, keep up repairs, collect the rents, and sell it for a price agreed upon and "after everything has been equitably satisfied," that the grantor should receive