# Hannum, Appellant, v. Media, Middletown, Aston and Chester Electric Railway Company.

*Appeals—Equity—Equity practice—Reinstating bill.*

Where the Supreme Court in reversing a decree dismissing a bill in equity directs that the bill be reinstated, and an injunction awarded, with leave to the defendant to move the court below to open the case for further testimony, the effect of the order of reversal is to restore the case to exactly the standing it had before the decree dismissing the bill had been·entered, and the court below may proceed to take additional testimony and may, without exceeding its authority, again dismiss the bill.

*Street railways—Branch of extension—Street already occupied.*

A property owner has no standing to complain of a street railway company using a street already occupied by an existing railway, where it appears that the company does not contemplate the construction of a branch of its own on the street, but purposes to use the existing track to link all the branches of the company with its main trunk line.

A street railway authorized by its charter to build branches and extensions, may employ as a connecting link between its main line and the proposed extensions or branches, the tracks of another company for a short distance, under agreement with the latter company. In such case the statutory prohibition against the construction of a line of railway upon a street already occupied by a railway has no application.

The charter of a railroad company may not authorize the company to construct, maintain and operate a railway on any street already occupied by the. tracks of a railway; but in case of branches and extensions the prohibition is limited merely to the construction in any street on which a track of another company has been laid. If the younger company secures from the older company the right to use a short portion of

the latter's lines, so as to make a necessary connection between branches and the chartered route, it in no way violates the law.

The grant to the company of the right to make extensions carries with it by implication everything, except what was expressly withheld, necessary to make the grant effectual.

A landowner cannot object by a bill in equity filed under the Act of June 19, 1871, P. L. 1360, to the abandonment of a part of the chartered route of a street railway company, and the substitution of another line, where it appears that the abandonment was made in pursuance of authority derived from the stockholders of the company; that the consent of the townships through which the chartered route led was duly granted; and that the action of the company and the consent of the several municipalities were duly certified to the secretary of the commonwealth.

The deviation by a street railway from its chartered route will be presumed to have been due to considerations of public convenience, in the absence of anything appearing to the contrary.

Argued Feb. 11, 1908.   Appeal, No. 39, Jan. T., 1908, by plaintiff, from decree of C. P. Delaware Co., Sept. T., 1899, No. 196, dismissing bill in equity in case of John B. Hannum v. The Media, Middletown, Aston and Chester Electric Railway Company and the Philadelphia, Morton and Swarthmore Street Railway Company.   Before MITCHELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ.   Affirmed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing the bill.

*O. B. Dickinson,* for appellant.—The former order of this court was this decree reversed and bill ordered to be reinstated and injunction awarded, with leave to appellee to move the court to open the case for further testimony, etc.   We leave this branch of the case with the statement that the bill which this court ordered to be reinstated the court below dismissed, and the injunction which this court awarded the court below dissolved : Hannum v. Media, etc., Electric Railway Co., 200 Pa. 44.

All that need be said with respect to the act of the appellee in making the tracks of another railway a part of its route, is that this sets at defiance the act of assembly, which ex-

pressly limits the right of construction to streets upon which no other railway is laid or authorized to be laid : Osborne v. Railway Co., 9 Pa. Superior Ct. 632.

A company with a charter route which taps an extensive and populous outlying district would bring to the city much of benefit as a consideration for the valuable privileges which the city had to give.    Appellant's position is that the company, having obtained the city franchise, cannot use it and refuse to construct the charter route which was the price of the privilege.

*E. A. Howell* and *Ellis Ames Ballard,* with them *David Wallerstein,* for appellees.—It is immaterial whether the court below exceeded the permission granted by this court when reversing the former decree, or did not : American Mfg. Co. v. S. Morgan Smith Co., 25 Pa. Superior Ct. 176.

Again, no legislation in Pennsylvania has ever limited the amicable use of the tracks of another company as a connection ; the only limitation is as to adverse use : City of Chester v. Union Ry. Co., 218 Pa. 24 ; Nanticoke Suburban St. Ry. Co. v. People's St. Ry. Co., 212 Pa. 395 ; Com. v. Bond, 214 Pa. 307.

A company may vary its charter route, and if such variance is greater than necessary, or if the charter route is open to objection, the commonwealth alone can make it in the interest of the general public : Penna. R. R. Co. v. Street Ry. Co., 176 Pa. 559 ; Rahn Twp. v. Ry. Co., 167 Pa. 84.

For an unconstructed street railway the consent of the municipalities through which its charter route passes only, is necessary to an abandonment of a portion of that route.    The consent of the municipalities through which it has filed extensions need not be secured.

Opinion by Mr. Justice Stewart, May 25, 1908 :

In compacting the ninety-one assignments of error which here confront us into five questions, and very clearly and concisely stating these, the learned counsel who argued the case for appellant has saved us both time and labor which otherwise would have been unprofitably expended.   We shall confine ourselves to these questions, observing the order in which

they have been presented. A brief statement of facts, however, is necessary to a proper understanding of their significance. The charter route of defendant's railway extended from a point at Elwyn station, on the Philadelphia, Wilmington and Baltimore Railroad, through the township of Middletown and Chester, to a point on the northern boundary of the city of Chester. By appropriate action taken by the stockholders and directors, and with the consent of the municipalities through which the route passed, so much of the route as led to Elwyn, from a point a short distance south of that station, was abandoned, and from that point a line leading to the borough of Media was adopted. The defendant company thereafter adopted certain extensions from its southern terminus upon and over certain of the public streets in the city of Chester, the design being to establish a connected and continuous system of street railways in said city, in conjunction with defendant's main line to Media borough. Connection between these several extensions and the main line could be made, however, only by the use of a street in the city known as Edgmont avenue, a necessary part of which was already occupied by the tracks of another railway. Resolutions providing for one of the extensions, adopted the avenue as part of the route, notwithstanding its previous occupancy by another railway. Municipal consent was given to the extension determined upon. Two of these proposed extensions were along certain streets on which the plaintiff owned property, but the occupancy contemplated was on the farther side. The bill filed in the case set forth the company's charter and the several extensions determined upon, and averring that irreparable injury would result to plaintiff's property from the construction of the extensions, challenged the franchise of the defendant company in this connection on several grounds, and prayed that its right to build the proposed extensions might be judicially inquired into. A preliminary injunction to preserve the status quo until final determination of the case was granted. Upon hearing the bill was dismissed. An appeal followed which resulted in a reversal of the decree: Hannum v. Media, etc., Electric Railway Co., 200 Pa. 44.

1. In reversing the decree this court directed that the plaintiff's bill be reinstated, and an injunction awarded, with leave

to the defendant to move the court below to open the case for further testimony. The decree was reversed because the defendant had not met the burden of proof that was upon it with respect to certain facts alleged in plaintiff's bill, which, if true, operated in law to defeat its claim of right to construct the proposed extensions. In allowing the case to be opened on defendant's motion, the purpose was to afford the defendant an opportunity to supplement its proofs, and establish, if it could, its right to do what it proposed. The injunction though awarded by this court, was issued from the court below. In awarding it, the purpose was to restore the case to exactly the standing it had before the decree dismissing the bill had been entered. The additional testimony to be taken under the order allowing the case to be opened, was for the consideration of the court below ; and for this court, only as error was assigned to the findings and conclusions of the court below with respect to it, on appeal. In a word, the case was remitted to be proceeded with on defendant's motion just as though it had not been adjudicated. The objection that in entering the decree from which the present appeal is taken, dismissing the plaintiff's bill, the court exceeded the authority given it under the decree of this court, has nothing to support it. The court below correctly interpreted the order made, and the case was proceeded with in exact compliance with the order. There can be no occasion for misunderstanding with respect to the costs. In reversing the former decree the order of this court was, that " all costs up to the present time be paid by the defendant." We pass to the second question, which is :

2. May a railroad be lawfully constructed as a branch, when the branch is proposed to be laid along a street which for more than 2,500 feet is already occupied by an existing railway? The reference here is to the occupancy by the defendant company of part of Edgmont avenue on which the Chester Traction Company had a line of street railway. From an examination of the map furnished us, it clearly appears that the 4,000 feet on Edgmont avenue over which defendant's extension was projected, and upon which are the tracks of another company, is the nexus which links all the extensions of the defendant's road in the city of Chester with the defendant's chartered route. A break at that point, which must result if appellant's

contention be sustained, would be a fatal severance to the branch lines, since it would leave them wholly disconnected from the chartered route, and, therefore, without legal existence. In view of the large expenditure of money made in the construction of the several extensions—they have been constructed and are now being operated—and in view of the fact that they compose so large a part of defendant's system, such a result would be little less than disastrous to the company. That is a circumstance, however, not to be considered in the determination of the present controversy, except as the general equities in the case, if there be any, make a consideration of it proper. The particular question here propounded has no application to the facts of this case. The defendant company never proposed, and, so far as we can see, never contemplated, the construction of a branch of its own on that part of Edgmont avenue which was occupied by the existing railway. Its purpose from the beginning was to subject in some way to its use, so much of the line of track owned by the other company on Edgmont avenue as was necessary to link the connecting branches with the trunk road. The resolutions ordering the extensions expressly so provide. Had these resolutions been part of the original charter route, such a provision appearing in the application for the charter would have either operated to defeat the application, or have rendered nugatory any charter that might have been granted thereon, for the reason that the act of assembly under which the company was chartered— Act of May 14, 1889, P. L. 211, sec. 1—authorizes only the incorporation of street railway companies for constructing, maintaining and operating street railways on streets or highways upon which no track is laid or authorized to be laid. But here we have no question as to the existence or validity of the defendant's charter; even though the company's right to maintain the extensions were to be denied, the company's lawful existence and the right to maintain its trunk lines would not be affected thereby. This feature of the case, though without significance in this connection, may call for further consideration when we come to the discussion of the next question submitted.

3. Can a street railway company make use of the tracks of another railway to connect its chartered route with the

branch otherwise disconnected? We adopt this form of the question because more concise than that formed by appellant's counsel. It eliminates some matters which may be regarded as superfluous. The question raised does not assail the integrity of the defendant's charter; it simply challenges the right of the company to do the thing complained of under an unimpeached charter. The charter gave the company the right to make such extensions or branches as it might deem necessary to increase its business and accommodate the travel of the public. The questions submitted concede that the company has in all respects complied with the provisions of the act of assembly relating to extensions or branches, except in the fact complained of, the adoption of another company's line, to connect its main line with its extensions. Does the limitation imposed in connection with the charter of street railway companies, that is to say, the provision which limits their right to streets on which no track has been laid or authorized, apply as well to extensions and branches? We can see nothing in the language of the act, nor yet in the general purpose to be accomplished thereunder, that would warrant an affirmative answer to this question. The limitation in express terms is upon the right to obtain a charter. We would naturally look for any limitation upon the right of a company legally chartered, to do those things which such companies are expressly authorized to do as they may deem necessary to increase its business and accommodate public travel, to be none the less explicit. The section of the act which imposes the charter limitation says nothing about branches; its reference is to companies to be formed, and it prescribes the conditions on which the charter may issue. It is the fourth section of the act that allows extensions to be made by companies acting under a sufficient charter. These extensions are allowed whenever a company may deem them necessary to increase its business to accommodate the public, and but a single limitation upon the right is imposed, viz.: that no extension or branch shall be constructed upon a street upon which a track is already laid or authorized. There is such a manifest distinction between the charter limitation and that imposed with respect to extensions, that the difference can be accounted for only as we understand each to apply exclusively to its own distinct subject, without

relation to the other.   The limitation in case of the former is that the charter may not authorize a company to construct, maintain and operate a railway on any street already occupied by the tracks of a railway.   The thing not allowed is the chartering of a company where the purpose is to construct an additional track upon a street already occupied, and maintain and operate such track.   The limitation upon the extension is, that it shall not be constructed in any street on which a track of another company has been laid.   The evident purpose in each case is to protect the property rights of already existing companies, and perhaps to save the public streets from an excessive servitude of this character which may interfere with the public use of them, but the several limitations are clearly distinguishable.   To accomplish the object in one case it was necessary to expressly disallow the incorporation of companies where the application showed a purpose to adopt a route which had been already appropriated; to accomplish it in the other case, the companies chartered were prohibited from constructing an extension or branch on a street previously occupied; and this is the only prohibition here imposed.   The southern terminus of defendant's road as chartered was the northern boundary of the city of Chester.   Concededly the company had a right to adopt an extension into and within the city limits, only in so doing it was prohibited by law from constructing a track upon a street where one was already in existence.   If it observed this prohibition and had municipal consent, its right was complete.   But the company found the only street which admitted of convenient and direct connection with the extensions it proposed to build, already occupied by the tracks of another company.   The use of this street for a distance of 4,000 feet was absolutely necessary to carry out the legitimate purpose of the company.   To meet this necessity, without transgressing the law which forbade the construction of a parallel line, it acquired the right from the superior company to use the latter's track for the required distance, and was thus enabled to establish a connected system.   In so doing it violated no express provision of the law ; did not defeat its purposes in any respect, and was clearly acting within, the rights implied in the legislative grant.   The grant to the company of the right to make extensions carried with it by impli-

cation, everything except what was expressly withheld, necessary to make the grant effectual. What was here withheld was the right to construct an additional track where one existed. This the company has not done or attempted to do. What it has done does not fall within the letter or spirit of the exception. The answer to this question must be a vindication of the company's right in the premises.

4 and 5. These questions relate to the effect of the abandonment by the defendant company of that part of its chartered route which led to Elwyn, and the substitution therefor of the line to Media. The court below found as a fact that the abandonment of the part of the chartered route here complained of, was pursuant to authority derived from the stockholders of the company; that the consent of the townships through which the chartered route led was duly granted, and that the action of the company and the consent of the several municipalities were duly certified to the secretary of the commonwealth. We may add that the evidence shows acts of acquiescence and ratification on the part of the city of Chester—not here complaining—quite as conclusive. The proceedings taken to effect a variation from the chartered route being found regular, and the acquiescence of the municipalities affected being shown, it does not rest with the plaintiff to call in question the propriety or necessity of the deviation, or the sufficiency of the defendant's action in this regard. The deviation from the chartered route in this case was determined upon evidently by considerations of public convenience. The defendant company had at least the right to the benefit of such presumption, in the absence of anything appearing to the contrary. In Penna. Railroad Co. v. Street Railway Co., 176 Pa. 559, we held that: " The occasion for such divergence and its extent, are questions of location, and the decision of them primarily is within the discretion of the railway company. If the variance from the charter route is greater than is necessary, or the charter route itself is open to objection, the commonwealth alone can be heard to make it in the interest of the general public."

This proceeding was under the Act of June 19, 1871, P. L. 1360. The act authorized no inquiry in such cases except as to the charter right to do the act complained of. Here, the de-

fendant company has shown a full legal franchise vested in itself to do what is made the subject of complaint.

The assignments of error are therefore overruled, the appeal is dismissed at the costs of appellant, and the decree is affirmed.