# Burkhard, Appellant, *v.* Pennsylvania Water Company.

*Corporations—Water companies—Eminent domain—Effort to agree—Res adjudicata—Exhaustion of power—Filtration plant—Validity of charter—Collateral attack.*

1. On a bill in equity to restrain a water company from condemning land, the plaintiff cannot allege that the defendant company made no proper effort to come to an agreement with him as to damages, where it appears that the plaintiff had ample opportunity to present this objection in prior proceedings relating to the approval of the water company's bond.

2. A water company's right to condemn land is not exhausted by one condemnation where it appears that it is necessary to condemn other land to supply the increasing needs of the public.

3. A water company may condemn land for a filtration plant, although the use of filtration plants was unknown and deemed unnecessary at the time of the incorporation of the company.

4. Complainant in a bill in equity to restrain a water company from condemning land cannot question the constitutionality of the act under which the defendant company was incorporated. This can only be done in a direct proceeding in which the commonwealth is a party.

Argued Oct. 17, 1911. Appeal, No. 82, Oct. T., 1911, by plaintiffs, from decree of C. P. No. 1, Allegheny Co., June T., 1909, No. 694, dismissing bill in equity in case of Walburga J. Burkhard et al. v. Pennsylvania Water Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.  Before FORD, J.

The court filed the following opinion:

### FINDINGS OF FACT.

1. The defendant, the Pennsylvania Water Company, is a corporation organized and doing business under the Act of May 29, 1901, P. L. 349, and consists of the merger and consolidation of several separate and distinct water companies, all incorporated under the laws of the commonwealth of Pennsylvania, and known as the Pennsylvania Water Company, with franchises covering Sterrett township; East Pittsburg Water Company, with franchises covering North Versailles township; Manufacturers' Water Company, with franchises covering Patton township; People's Water Supply Company, with franchises covering Wilkins township; Citizens' Water Company, with franchises covering Braddock township; Rural Water Company, with franchises covering Wilkins township; Valley Water Company, with franchises covering Penn township; and Artesian Water Company, with franchises covering the borough of Wilkinsburg, all in the county of Allegheny and state of Pennsylvania, and is engaged in the business of pumping, storing, selling and distributing water.  The office and principal place of business of the defendant company is in the county of Allegheny.

2. Prior to 1899 the defendant company, or the companies merged, had provided and erected the works and machinery deemed necessary by the company for the raising and introduction into the districts embraced within its charter of a sufficient supply of pure water, and had provided and maintained the buildings, cisterns, reservoirs, pipes and conduits required for the reception and conveyance thereof.

3. By sundry conveyances and assurances of law fully set out in paragraphs two and three of plaintiffs' bill, the plaintiffs, Walburga J. Burkhard, Josephine Friday and Mary A. Saupp, are seized in fee and possessed of a certain

tract of land situate in the township of Penn.  The fee simple in said property is vested absolutely in the plaintiffs in the proportion of three-sevenths to Walburga J. Burkhard and two-sevenths each to Josephine Friday and Mary A. Saupp, excepting therefrom the coal thereunder, with the mining rights, if any, attached thereto.

4. In the year 1890 (prior to the institution of proceedings in the court of common pleas No. 1, at No. 731, March Term, 1897) and within the period when the property was owned by Josephine Wolf or Theodore Heilman, predecessors in title of plaintiffs, the defendant company exercised its right of eminent domain over the property of plaintiffs, containing 5.8519 acres by the location and construction of a pipe line from its reservoir on adjoining lands, which pipe line was constructed along the township road known as the Puckety road, and within the boundary of the tract containing 5.8519 acres.  The pipe line was constructed without the permission of Josephine Wolf or Theodore Heilman and without proceedings being instituted to condemn the right of way, and without damages being assessed or paid to Josephine Wolf or Theodore Heilman.

5. At No. 731, March Term, 1897, the defendant company presented its petition to the court of common pleas No. 1 representing that it had exercised its right of eminent domain over the tract of land owned by plaintiffs for the purpose of laying and constructing thereon a thirty-inch cast-iron pipe line for the transportation of water from its pumping station on the Allegheny river at Wildwood to its reservoir on defendant's land immediately adjoining the land now proposed to be taken, and prayed that its bond in the sum of $30,000 therewith filed be approved. Josephine Wolf, to whom the bond was tendered, was the owner of the property then proposed to be taken and was plaintiffs' predecessor in title.  The pipe line was not constructed.

6. About June 20, 1903, the defendant company presented its petition to the court of common pleas No. 2 of

Allegheny county at No. 733, July Term, 1903, represent-
ing that it had exercised its right of eminent domain over
the property now owned by the plaintiffs and had taken
a portion thereof for the purpose of erecting a reservoir
thereon, and prayed the approval of a bond in the sum of
$15,000 then filed.   Thereafter, on December 19, 1903,
the defendant company presented its petition to the court
of common pleas No. 2 averring that the company had
investigated the adaptability of the land for said purpose
and found it unsuitable, and in view of this and of the ex-
cessive price and determined opposition to condemnation,
the company was desirous of discontinuing the proceedings
and withdrawing the bond, which petition was allowed,
and by consent of court the bond was withdrawn April 23,
1904.

7. In 1907, to meet the demand for an adequate supply
of pure and wholesome water, it became and was neces-
sary for the defendant company to enlarge its plant by the
construction of a filtration system, and for the purpose of
erecting thereon a filtration plant and other works for the
reception, filtration and conveyance of water, the defend-
ant company in February or March, 1909, surveyed and
appropriated 5.8519 acres of the tract owned by the plain-
tiffs.

8. In March or April, 1909, but prior to April 16,
W. C. Holly, the superintendent, and acting as the author-
ized agent of the defendant company, visited Walburga J.
Burkhard, one of the plaintiffs, at her place of residence
on Penn avenue, in the city of Pittsburg, explained the
company's purpose of taking and appropriating a part of
the tract of land situate in Penn township, of which she
was one of the owners, and offered her the sum of $10,000
for the part proposed to be taken.   Mrs. Burkhard refused
the offer, stating that the owners, the plaintiffs, had a cash
offer of $40,000 for the entire tract.   After the offer had
been made and rejected, Josephine Friday, one of the
plaintiffs, entered the room where the conference was
being held and Mrs. Burkhard, either in the presence of

Mr. Holly or immediately after his departure, informed Mrs. Friday of the offer made by Mr. Holly.

9. That portion of plaintiffs' property containing 5.8519 acres was duly and properly appropriated by the defendant company for its corporate uses by a resolution of its board of directors passed at a regular meeting of the board, held on April 16, 1909.

10. On April 17, 1909, the defendant company presented to the court of common pleas No. 2 of Allegheny county, at No. 268, July Term, 1909, its petition, representing, inter alia, that the defendant company had been unable to agree with the owners of the land (plaintiffs herein) upon the amount of damages sustained by reason of taking and occupying the land appropriated; that a bond had been tendered to and refused by the owners, and prayed the approval of bond in the sum of $30,000 then filed. On April 22 exceptions to the sufficiency of the bond were filed by the owners and thereafter, on May 4, 1909, upon leave of court, the bond was withdrawn. On May 11 the defendant company filed its bond in the sum of $30,000 together with a petition praying its approval. On the same day exceptions to the sufficiency of the bond were filed by the owners. On the day following, May 12, the court entered the following order, "Exceptions to the bond filed herein are all overruled except the first, without, however, passing upon the merits of the controversy sought to be raised by them and without prejudice to the exceptants' right to prosecute them in any other form, and the first exception is sustained as to the amount of bond, being of the opinion that the bond should be in the sum of $40,000. A bond in that amount with the same sureties and in the same form will be approved." And on May 14 bond of the defendant company and its sureties in the sum of $40,000 was presented in open court and approved and ordered filed.

11. Shortly after the approval of the bond by the court of common pleas No. 2 the defendant company entered upon and occupied the 5.8519 acres taken and appropri-

ated, and ever since has been and is now in possession thereof, and has erected thereon, or has in course of erection, the sedimentary and settling basins, the septic tank and other appliances and apparatus necessary in the construction of a filtration system.

12. To enable the company to erect and construct a filtration plant, it was necessary that the company acquire additional land either. by purchase or condemnation. In taking and appropriating plaintiffs' land for that purpose the defendant company exercised its right in good faith. The land taken adjoins the defendant's land, upon which is erected its reservoir No. 1 and in location and elevation is adapted to the requirements of a filtration plant.

### CONCLUSIONS OF LAW.

1. The approval by the court of common pleas No. 2 of Allegheny county of the bond filed by the defendant company was an adjudication that an attempt had previously been made by the company to settle with the plaintiffs, owners of the property, and that everything had been done entitling the defendant company to file the bond.

2. A water company is vested by law with the power to acquire by purchase or condemnation such lands as may be necessary for its corporate uses and purposes. This power is not exhausted by a taking for an original construction of its plant and instrumentalities, but may be exercised when by the growth of population and increased demand it becomes necessary to acquire lands for the enlargement or extension of its plant.

3. The defendant company by a prior exercise of its right of eminent domain over plaintiffs' land did not thereby exhaust its power to condemn such additional parts thereof as might reasonably be required for the erection thereon of a filtration plant necessary to enable the company to furnish the public with an adequate supply of pure water.

4. The defendant company is vested by law with the selection of a location for the plant and instrumentalities

necessary for the supply of pure water, and this discretion cannot be inquired into unless it be shown that its action was capricious or wantonly injurious. There was no evidence in this case which would justify the court in reviewing the discretion exercised by the board of directors of the defendant company in taking and appropriating part of plaintiffs' land.

5. The plaintiffs in this proceeding cannot impeach the constitutionality of the act of assembly under which the defendant company is formed.

6. The bill should be dismissed with costs.

The questions raised by plaintiffs and urged upon argument are:

(a) Was a bona fide effort made by the defendant company to effect an amicable agreement with the plaintiffs as to compensation for the land sought to be taken, and if not, what is the effect of its failure to make such an attempt?

(b) Had the defendant company prior to the filing of the bond in this matter exhausted its right of eminent domain over plaintiffs' property?

(c) The Act of May 29, 1901, P. L. 349, under which the defendant company is organized and doing business, is unconstitutional.

We will consider the questions in order:

The contention of the plaintiffs is that even conceding that an effort has been made to agree with Mrs. Burkhard, yet there was no evidence to show that an attempt had been made to agree with either Mrs. Saupp or Mrs. Friday and that such effort not having been made the court of common pleas No. 2 had no jurisdiction to entertain proceedings in condemnation and to approve and confirm the bond tendered.

In Bland v. Tipton Water Co., 222 Pa. 285, wherein a like contention was urged, Mr. Justice Brown, said:

"We need only repeat what was said in Wadhams v. Lackawanna and Bloomsburg Railroad Co., 42 Pa. 303, 'It is now insisted that there was no evidence of any

attempt by the defendants to settle with the plaintiffs, and agree upon the damage before they filed the bond given as security. Hence it is inferred that the tender of the bond and the filing of the same was authorized by law and the defendants were not empowered to appropriate the land for said road. Though the acts of assembly do not in terms require any attempt to make a settlement before a tender of bond or filing it in the common pleas, it is perhaps a just inference from their language that there should be some evidence of inability of the parties to agree before the court shall undertake to pass upon the security offered. But the very offer of the bond is an assertion by one of the parties that they cannot agree and is in itself some proof of such inability, for without the consent of both such an agreement cannot be made and if it is not so, the action of the court approving the sureties and directing the bond to be filed involves an adjudication that everything has been done which entitled the company to have the bond filed. If an attempt to settle was a prerequisite, the order of the court is conclusive that the attempt had been made. The decree of the court, like any other judgment, is final between the parties as to all matters adjudicated therein directly and to all facts which were essential to that adjudication.' The act of 1874 does not in terms require any attempt to make a settlement before a tender of a bond or filing in the common pleas.''

In this case, the bond first filed, on exceptions to the amount being sustained, was withdrawn and a second bond filed, thereby indicating that the parties had not and could not agree.

The defendant company was incorporated for and engaged in supplying water to a number of boroughs, townships and districts. Prior to 1899 the company maintained a plant consisting of a pumping station, reservoirs, and apparatus for the raising and storing of water, and had laid the mains and lines required for its distribution. It is not denied by the plaintiffs that the plant operated by the defendant was inadequate to supply a sufficient

quantity of pure water nor that to meet the demand and make reasonable provisions for the future it was necessary to construct a filtration plant, but they contend that the defendant had therefore exercised its right of eminent domain over plaintiffs' land of which the 5.8519 acres was a part condemning a part thereof for the construction of a pipe line, an additional part for the erection of a reservoir, and by the laying of a pipe line along the public road known as the Puckety road, thereby exhausting its power, and is now unable by the exercise of the right of eminent domain to take and appropriate any additional part of the land affected by the condemnation proceedings or by the laying of the pipe line.

The power of a water company is not exhausted by a taking of land for an original construction of its works. It is not bound to provide for a demand which could not have been foreseen. The increase in trade and business, the change in conditions, the extension of municipalities and growth in population may necessitate increased facilities and an enlarged plant.

The cases relied upon by the plaintiffs hold that when a railroad company has exercised its power of location and adopted a route for its line there is no necessity or authority for any further exercise of that power.

In the case of Keller v. Riverton Water Co., 34 Pa. Superior Ct. 301, the distinction between the rights which may be exercised by a railroad company in the location of its routes, and the rights of water companies was pointed out and it was held that a water company does not exhaust its rights to condemn land by a single exercise of the right of eminent domain. In that case the court says:

"When it appears, as it does in the present case, that the performance of the duties it owes to the public requires a second exercise of a power expressly conferred on a corporation, it seems both anomalous and unreasonable to hold that such power is exhausted by a single use of it."

We therefore hold that the defendant company had a right to acquire by purchase or condemnation such addi-

tional land as was required for the erection and construction of a filtration system necessary for an adequate supply of pure water.

The act of May 29, 1901, is entitled, "An act supplementary to an act to provide for the incorporation and regulation of certain corporations, approved April 29, 1874, providing for the merger and consolidation of certain corporations."

Section 1 of the act provides that it shall be lawful for any corporation now or hereafter organized under or accepting the provisions of the act of 1874, or any of the supplements thereto, or of any other act of assembly authorizing the formation of corporations to buy and own the capital stock and merge its corporate rights with and into those of any other corporation, so that such corporations may consolidate.

The plaintiffs contend that the act offends against art. III, sec. 3, of the constitution, in that the subject is not clearly expressed in the title for the reason that the title gave no notice that the act provided for the merger and consolidation of corporations organized under the supplements to the act of 1874, nor under "any other act of Assembly authorizing the formation of corporations."

It has uniformly been held that the validity of a charter for a public purpose cannot be determined in a collateral proceeding by a private suitor. It can only be done in a direct proceeding in which the commonwealth is a party. "Whether for any reason the charter of a corporation was originally invalid, or has been forfeited is a question which the commonwealth only can raise:" Olyphant Sewage-Drainage Co. v. Olyphant Boro., 196 Pa. 553. In Windsor Glass Co. v. Carnegie Co., 204 Pa. 459, it was held that the Act of June 19, 1871, P. L. 1360, enables a private suitor to demand that the charter to do the thing complained of shall be shown. "But it does not put him," as the court says, "in the Commonwealth's place, or clothe the court at his instance with the Commonwealth's general power of inquiry. The inquiry is limited to the nature and extent

of the franchises prima facie conferred by the charter and does not extend to the validity of the charter itself."

If the act attempting to confer the power was invalid of course the power did not exist, but this plaintiff cannot be heard to make that objection and hence the objection on that ground fails: Freeland v. Pennsylvania Central Insurance Company, 94 Pa. 504.

If it be conceded that the plaintiffs may question the existence of the defendant company as a de facto corporation by showing that the act under which the company was incorporated is invalid, yet the objection urged by the plaintiffs would not justify the court in declaring the act unconstitutional.

The Act of April 29, 1874, P. L. 73, had for its object the establishment of a uniform and convenient system for the formation and regulation of corporations and is known as the corporation act of 1874. Clause 9 of sec. 2 authorizes the incorporation of companies for the supply of pure water. The Act of May 16, 1889, P. L. 226, is "A further supplement to the Act of 1874," amending secs. 2 and 34 by providing, inter alia, for the incorporation of additional corporations.

The act of 1901 is a further supplement to the act of 1874. That its title does not refer to the act of 1889, itself a supplement to the act of 1874, we do not regard as material. It is unnecessary in the title of a supplementary act to refer to the fact that a previous supplement or amendment to the original act has been enacted.

The title of the act has but one subject clearly expressed, and to it every provision is germane. No one could read the title to the act and fail to understand that the purpose of the legislation related to the merger and consolidation of corporations and it is therefore in harmony with the constitutional requirements.

Let a decree nisi be entered accordingly.

*Error assigned* among others was the decree of the court.

*William A. Griffith,* with him *David E. Mitchell* and
*L. H. Campbell,* for appellants.—The power of a water
company to condemn additional portions of the same
tract of land for a plant is exhausted by the taking and
condemnation in the original construction of its plant
adequate at the time of construction: McKeen v. Canal
Co., 49 Pa. 424; McKay v. Water Co., 6 Pa. Dist. Rep.
364; Poughkeepsie Bridge Co., 108 N. Y. 483 (15 N. E.
Repr. 601).

The powers granted to the defendant corporation must
be interpreted in accordance with the intention of the
legislature. The intent must be gathered from the facts
and circumstances obtaining and in the mind of the legis-
lature at the time the legislation is passed: Com. v.
Gouger, 21 Pa. Superior Ct. 217.

*George B. Gordon,* with him *William Watson Smith*
and *Duff & Carmack,* for appellee.—The record of the
court of common pleas No. 2 approving bond which had
been tendered to appellants to secure damages sustained
by the appropriation of their ground is necessarily con-
clusive as to the point raised by the appellants that there
was no sufficient effort to agree before the bond was filed:
Wadhams v. R. R. Co., 42 Pa. 303; Bland v. Water Co.,
222 Pa. 285; Reitenbaugh v. R. R. Co., 21 Pa. 100; St.
Louis & San Francisco R. R. Co. v. Southwestern Tel. &
Tel. Co., 121 Fed. Repr. 276.

The right of the Pennsylvania Water Company to ap-
propriate was not exhausted by its prior exercise of the
power of eminent domain: Peffer v. Penna. Water Co., 221
Pa. 578; Keller v. Water Co., 34 Pa. Superior Ct. 301;
Ligat v. Com., 19 Pa. 456; Phila., Wilmington & Balti-
more R. R. Co. v. Williams, 54 Pa. 103; Pittsburg, Vir-
ginia & Charleston Ry. Co. v. Pittsburg, Canonsburg &
State Line R. R. Co., 159 Pa. 331; Edgewood Water Co.
v. Troy Water Co., 7 Pa. C. C. Rep. 476; Penna. R. R.
Co. v. Miller, 112 Pa. 34; McClinton v. Railway Co., 66
Pa. 404.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1912:

The elaborate opinion filed in the court below relieves us from the necessity of an extended discussion of the questions raised by the record. They have all been satisfactorily disposed of by the learned trial judge.

Conceding it to have been the duty of the defendant company prior to presenting its bond for approval, to make an attempt to agree with the owners as to the amount of compensation they ought to receive for the damages sustained by the appropriation of their property, that question was adjudicated in the proceeding in the common pleas in which a bond was approved by the court. The plaintiffs there had an opportunity to raise any and every question which would have prevented the approval of the bond, and the decree entered by the learned court approving the bond decided every question which might have been raised. It is now too late to raise any question which might have been adjudicated in that proceeding, and that includes the question whether a bona fide effort was made by the defendant company to effect an amicable agreement with the plaintiffs as to compensation for the land taken prior to presenting the bond to the court for approval. "The very offer of a bond," says STRONG, J., in Wadhams v. Lackawanna & Bloomsburg Railroad Co., 42 Pa. 303, 310, "is an assertion by one of the parties that they cannot agree, and it is in itself some proof of such inability, for without the consent of both such an agreement cannot be made. And if it were not so, the action of the court approving the sureties, and directing a bond to be filed, involves an adjudication that everything had been done which entitled the company to have the bond filed. If an attempt to settle was a prerequisite, the order of the court is conclusive that the attempt had been made."

We have no doubt of the right of the defendant company to condemn additional land for its plant. It was not denied, as appears by the court's opinion, that the plant

was inadequate to supply its patrons with a sufficient quantity of pure water. If the company has exhausted its power to condemn land for the use of the filtration plant it cannot comply with our decree which becomes a brutum fulmen and should never have been entered. But we do not agree with that contention. The defendant was incorporated for the purposes of furnishing water to the public in certain designated territory, and the right of eminent domain was conferred for the purpose of enabling it to exercise its functions during the continuance of its corporate existence. Its charter authorizes it to furnish a 'sufficient supply of pure water to the public and empowers it to appropriate lands and water to the extent necessary to accomplish the purpose. The act of assembly under which the defendant was incorporated does not limit or confine the company to any specific quantity of land or water which it may take for carrying out the purposes of its incorporation. On the other hand, the charter authorizes it to exercise the right of eminent domain to the extent necessary to secure land and water sufficient for its charter purposes. This is necessarily a continuing power, otherwise the first appropriation having exhausted the power, the company could not fulfill its charter duties to the public and supply the increasing demand occasioned by the growth of the population of the territory in which it is authorized to supply water. This duty is as imperative as the duty to supply the original population of the territory covered by the charter. Hence the increasing demands on the company for additional service compel the company to enlarge its plant as occasion requires which can only be done effectively by the exercise of the power of eminent domain. To deny it the right to exercise this power as the exigencies of its business demand is to defeat the purpose for which the company was incorporated and to prevent it performing a duty imposed by its charter. It will not be assumed that the state intended to authorize a water company to supply water to the public perpetually as it does in such charters, and

withhold from the company the effective means of carrying the power into execution.

The contention that the defendant had no right to condemn land for a filtration plant, because filtration was unknown and was deemed unnecessary at the time of the incorporation of the water company, is untenable. The company was incorporated for the purpose of supplying water to the public in the territory defined by its charter. It may and should employ any effective modern means which will enable it to accomplish the purpose. It is not confined to the means and instrumentalities which were in use in 1874 when the general corporation act was passed. The law defines the purposes of the company's incorporation and requires it to use the means necessary to accomplish the purpose. It is the duty of the company to use the best means known at present to furnish pure water to the public. If those means be a filtration plant it should be constructed, and if necessary to secure land for the purpose the company may avail itself of the right of eminent domain. To hold otherwise would clearly be to deny to the company a power conferred by its charter.

The decree is affirmed.