## Gring et al., Appellants, *v.* Sinking Spring Water Co.

*Water companies—Corporations—Eminent domain—Act of June 19, 1871, P. L. 1360—"Possession of right or franchise"—Charter —Equity—Parties—Necessity—Violation of law—Presumption— Corporate action—Lease—Acts of June 7, 1907, P. L. 455; April 29, 1874, P. L. 73; May 16, 1889, P. L. 226, and May 26, 1893, P. L. 158.*

1. Inquiry in a proceeding resting on the Act of June 19, 1871, P. L. 1360, must bear some direct relation to the ascertainment of a charter power or right to commit the act complained of; and restraint can be granted only on a finding of either the nonexistence of the power or its nonexistence for the purpose to which it is being put to the injury of the complainant.

2. When noncompliance with steps essential to the exercise of a charter power is shown, the assertion thereof will be enjoined on the theory that the right to use the power exists only in conjunction, and upon compliance, with these essentials; but, in such instances, full relief under the act need not always be given when another and more appropriate remedy is at hand.

3. If the power is found to exist in the corporation to do the act complained of in the manner it is being done, the authority of the court to interfere is at an end.

4. Alleged invalidity, abandonment, termination or forfeiture of a charter, can be inquired into only by the State.

5. Inquiry may be made under the Act of 1871, to ascertain whether a bond has in fact been entered.

6. In water company cases, unless it appears the water is being condemned for the purpose of "directly supplying the same to the public in townships and municipalities other than the one which the company is authorized to supply," the mere fact of a purpose incidentally to supply persons outside the charter district, will not warrant judicial interference with the condemnation.

7. Examination may be made, on a bill in equity by a property-owner, concerning the district a corporation is authorized to serve,

at least to the extent that the inquiry is helpful in determining the question of the necessity for appropriating the water in controversy in order to supply such territory, whatever its limits may be.

8. Proceedings resting on the Act of 1871 are subject to the rules which govern equity practice.

9. No corporation has a franchise right to make an "experimental appropriation"; but "an anticipated violation of the law" is not to be inferred.

10. A stream of water, which, after leaving a basin, courses its way in a well defined channel to a lower level, and is large enough in volume to run a mill, is not a "private water supply" within the meaning of the Act of April 29, 1874, P. L. 73, as amended by the Act of May 16, 1889, P. L. 226.

11. A water company's right to condemn land is not exhausted by one condemnation, where it is necessary to condemn other land to supply the increasing needs of the public.

12. Where in a proceeding against a water company under the Act of 1871, the chancellor finds that a necessity existed for a greater supply of water in the "territory presently served" by defendant and another company which it had leased, but the record fails to show that the certificate called for by the Act of June 7, 1907, P. L. 455, to validate the lease, had been filed, a decree for defendant will be reversed, and the case remitted for hearing as to whether such certificate had been filed, and for such other findings and conclusions as may be demanded by the facts developed, and the effect which must be given to the Act of 1907, as the court may view it.

13. If, on further hearing, the chancellor finds that, when the lease was made, defendant did in fact surrender or abridge in any degree its right of eminent domain, he will adjudge the case in accordance with what he may determine to be the requirements of this situation. If, however, he finds no such surrender was made, then the situation will have to be judged by the effect which that state of facts may have on defendant's right to condemn the property, and this would call for an inquiry concerning the necessities of the district which defendant would then have the legal right to serve.

14. On such rehearing, the court below may determine how far, if at all, the proceedings may be sustained under the Act of May 26, 1893, P. L. 158, authorizing water companies to acquire land to preserve their water from contamination.

15. On a bill in equity under the Act of 1871, it is not proper for the court to inquire as to the method to be pursued by defendant in using the water condemned.

16. In a proceeding under the Act of 1871, where the case is tried on the plan of impliedly conceding the existence of prior corporate action, the appellate court will not consider the contention that because defendant had not shown any action of its board of directors, declaring a necessity for the condemnation, it was without authority to make the condemnation.

17. Cases growing out of proceedings under the Act of June 19, 1871, P. L. 1360, classified and explained.

Argued February 28, 1921. Appeal, No. 149, Jan. T., 1921, by plaintiffs, from decree of C. P. Berks Co., Equity Docket 1917, No. 1197, dismissing bill in equity, in case of Lewis W. Gring et al. v. Sinking Spring Water Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SADLER and SCHAFFER, JJ. Reversed.

Bill in equity under Act of June 19, 1871, P. L. 1360, to enjoin condemnation proceedings. Before ENDLICH, P. J.

The opinion of the Supreme Court states the case.

The court dismissed the bill. See 12 Berks Co. L. J. 47, 191. Plaintiffs appealed.

*Error assigned,* among others, was decree, quoting it.

*Cyrus G. Derr,* for appellants.—The spring and stream proposed to be taken by the appellee are and constitute a private spring and a private water supply within the intent of the proviso of the Act of April 29, 1874, as amended by the Act of May 16, 1889, P. L. 226: Gring v. Water Co., 7 Pa. Superior Ct. 63; Haupt's App., 125 Pa. 211.

The water company had a right of election to take water at any point on defendants' land, and having elected to take and actually taken it at the point below the public road, it fully exercised its right in 1895 and cannot now make a second election: McKay v. Penna. Water Co., 6 Pa. Dist. R. 364.

In so far as defendant company proposes to take plaintiffs' land and water supply for the purpose of preventing pollution, the proceeding is not warranted by law, the remedy for the prevention of pollution, if wrongfully created, being by proceeding directly against plaintiffs' tenants; and if lands are to be appropriated to prevent contamination, the remedy especially provided by the Act of May 26, 1893, section 2, P. L. 158, must be pursued.

The proposed appropriation by defendant company includes the putting under ground of the stream in question and the exclusion of plaintiffs and their tenants from ingress and egress thereto, things which defendant company is without legal authority to do.

The proposed taking of the stream at a higher elevation is for the purpose of furnishing more water in the territory adjacent to that of defendant company, that is to say, in the territory of the Wyomissing Water Company, and defendant company cannot under the law appropriate plaintiffs' property and impair their water rights for such purpose: Bly v. Water Co., 197 Pa. 80.

When the necessity is generally alleged in a petition for condemnation and is denied by the landowner under oath,

The burden of establishing the necessity is cast upon the company, and

Because in this case the necessity was denied by appellants under oath and appellee has not shown any action by its board of directors declaring such necessity, and also

Because the testimony shows that there was no necessity, or to say the least that the necessity is doubtful,

The appellee is without the right to make the appropriation in question.

On the statement of defendant company in its answer it must be concluded that its purpose is to make an experimental appropriation of plaintiff's land and water, reserving to itself the right to take or not to take after

the damages shall have been ascertained, a proceeding not legal under the law of Pennsylvania.

*Edgar S. Richardson,* with him *John B. Stevens,* for appellee, cited: Gring v. Water Co., 7 Pa. Superior Ct. 63; Haupt's App., 125 Pa. 211; Burkhard v. Water Co., 234 Pa. 41; Keller v. Water Co., 34 Pa. Superior Ct. 301; McKay v. Water Co., 6 Pa. Dist. R. 364.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, April 18, 1921:

Catherine Gring, from whom the present plaintiffs inherited the real estate involved in this controversy, owned certain property in Berks County, containing a spring, from which the water flows in a defined stream for about 500 feet to a public road, thence by a flume, or headrace, under and across the road to another piece of the Gring land, thence across the latter to property of defendant company, where it is stored in a reservoir. Before reaching the public road, the water was formerly used to propel the machinery in a hosiery factory, and, after crossing the road, it passed to the wheel of a gristmill; but these activities have long since ceased. In 1895, the Sinking Spring Water Company, defendant, appropriated the water of this stream, electing to take it from a point, just beyond the road, in that part of plaintiff's land on which the old mill is located.

July 2, 1907, the Sinking Spring Company acquired by lease the plant and franchise of the Wyomissing Water Company, which latter corporation operated in a territory adjacent to that served by the former. Defendant, in 1916, filed a petition averring "it is necessary now for the purpose of the company; first, to appropriate the water of the aforesaid stream or creek, to which the company is entitled, at a place or point further up the stream [as indicated on a plan attached to the petition] and, second, to appropriate a small rectangular .......parcel.......of land.......approximating 250

feet by 100 feet [describing it by reference to the attached plan]." At the same time, defendant formally tendered a bond to secure the payment of damages; which bond, as we understand the record, has not yet been approved.

Catherine Gring filed exceptions to defendant's petition; and, on their dismissal, she appealed to this court. We quashed the appeal (Sinking Spring Water Co. v. Gring, 257 Pa. 340), on the ground that the order in question was interlocutory; but, in so doing, said that our action was "without prejudice to her [appellant's] right to raise,—in this court, on appeal from a final decree against her in [the condemnation proceedings] or by a proper independent proceeding,—the question of the right or franchise of the appellee to take her property."

Subsequently, in 1917, Catherine Gring filed the present bill in equity, under the Act of June 19, 1871, P. L. 1360, praying that her rights and those of defendant, respectively, might be "ascertained and defined," and that the latter be restrained from further proceeding with its condemnation of her property. The original plaintiff having died, Lewis and George W. Gring, next of kin, were substituted in her place; they now appeal from a decree dismissing their mother's bill.

Section 1 of the Act of 1871, provides that "in all proceedings in courts of law or equity,......in which it is alleged that the private rights of individuals......are injured......by any corporation claiming to have a right or franchise to do the act from which such injury results, it shall be the duty of the court......to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such alleged injury......results, and, if such right or franchise has not been conferred upon such corporation, such courts......shall......restrain such injurious acts."

It will be observed that the act relied upon by appellants is of limited scope; our research discloses no case where inquiry thereunder was permitted concerning the regularity of a condemnation from mere procedural standpoints, although we have examined every reported decision of this court upon the subject in hand: see Williams v. D., L. & W. R. R. Co., 255 Pa. 133, 144.

While, by the expression "a proper independent proceeding," used by us in Sinking Spring Water Company v. Gring, supra, we referred to the Act of 1871, yet we did not then intend to intimate that such independent proceeding could be made a general substitute for the exceptions which we there refused to review, or for others that might have been filed in the condemnation proceedings proper. What we meant was that, by a proceeding in equity under the Act of 1871, "the question of the right or franchise of the [water company] to take her [now appellants'] property" might be brought before the court for adjudication; and, in fact, this is precisely what we said.

It is necessary to examine our decisions under the act in question to determine, for present purposes, just what is intended by the legislative language "it shall be the duty of the court......to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such alleged injury......results"; and, in making this review, it will be found that the cases where relief was granted all fall within one of the following classes: (1) those in which the corporation had no charter right to do the thing complained of; (2) those in which, though the power was apparently given by the corporation's charter, it was attempted to be exercised in a manner, for a purpose or to an extent not authorized by law; (3) those wherein a power that ordinarily would exist under the charter was attempted to be exercised in violation of an agreement previously made by the corporation, which, under the attending circumstances, was to

be viewed "as though named in the charter"; (4) those in which, though ample power was given by the charter, it was conditioned upon the precedent doing of certain things that had not been done; (5) those wherein the power granted by the charter was to be exercised only on consent of some other public body or bodies and such consent had not been granted, or had been given on a condition which had not been fulfilled or had been broken.; (6) those in which, though the power was conferred by defendant's charter, some other corporation, also having power so to do, had precedently exercised its like right, and, under the circumstances, it would have been illegal or inequitable to disturb the latter.

In McCandless's App., 70 Pa. 210, a private railroad endeavored to exercise the right of eminent domain, and relief was allowed under the Act of 1871; Edgewood R. R. Co.'s App., 79 Pa. 257, 271, is another case of that kind. In Mory v. Oley R. R., 199 Pa. 152, a railroad corporation was restrained from building a street railway.

In Henry v. Deitrich, 84 Pa. 286, we held that, where a church congregation was divided, a charter procured by one faction did not give the right to usurp property theretofore held in common by all members; and relief was granted under the Act of 1871.

Sterling's App., 111 Pa. 35, was a proceeding under the act. We there said that, while the court could not consider the validity of the charter involved, it could examine to see if the defendant was acting in accord with its franchise rights; and, where no charter authority was shown to lay a pipe on a public road, it should be restrained.

Pa. R. R. Co.'s App., 115 Pa. 514, 528, is a case where a corporation's right to lay tracks on a public street was inquired into under the Act of 1871.

We ruled in Barker v. Hartman Steel Co., 129 Pa. 551, that a manufacturing corporation could not acquire by lease from a railroad the right of eminent domain vested in the latter, so as to enable the former to con-

struct a railway on a borough street, and affirmed an injunction decree entered under the Act of 1871.

Germantown P. R. Co. v. Citizens P. Ry. Co., 151 Pa. 138, holds that, in a proceeding under the act, one railway company may be enjoined by another from unlawfully laying tracks in a street occupied by complainant.

Potts v. Quaker City Elev. R. R. Co., 161 Pa. 396, is an instance where, under the act here in question, we restrain the erection of an elevated railroad, on the ground that there was then no legislation authorizing the construction of such an enterprise.

Several of our cases decide that a private individual is entitled to enjoin a passenger railway company from constructing its road in front of the complainant's property until the corporation can show official consent from all the municipalities along its proposed line, there being in effect no charter power to proceed except by such consent: see Penna. R. R. Co. v. Montgomery C. P. Ry. Co., 167 Pa. 62; Hannum v. Media, M., A. & C. E. Ry. Co., 200 Pa. 44.

Hopkins v. Catasauqua Mfg. Co., 180 Pa. 199, holds that there is jurisdiction in equity at the suit of an abutting property owner, under the Act of 1871, to compel the removal of a railroad constructed by a manufacturing company without the right of eminent domain.

In Bly v. White D. M. W. Co., 197 Pa. 80, we ruled that a water company might be restrained under the act from appropriating plaintiff's land until it filed a bond to secure the damages; and that such a corporation had no right to appropriate water for the purpose of directly supplying the same to communities outside its authorized district (on this last point see cases cited, infra).

Packard v. Thiel College, 209 Pa. 349, 352, holds that persons who had contributed for the establishment of a college to be situated at a certain place, had standing in equity, under the Act of 1871, to prevent its removal, on the ground that, after the institution had been formally established, the place adopted "became distinctly its

only location as though it had been named in the charter."

Edwards v. Pittsburgh Junc. R. R. Co., 215 Pa. 597, 602 et seq., rules that "municipal consent to the occupation of streets by a railroad upon condition, and the condition broken, is no consent at all"; and, therefore, a citizen has standing, when he finds his property rights invaded by such occupation, to challenge the authority of the corporation to do the act from which he suffers.

Boalsburg Water Co. v. State College Water Co., 240 Pa. 198, is a case where an injunction was granted to restrain one water company from condemning a source of supply already appropriated by another company.

In Kane & Elk R. R. Co. v. Pitts. & West. R. R. Co., 241 Pa. 608, we ruled that a standard gauge railroad, whose tracks are threatened to be crossed by those of a narrow gauge road, has standing in equity, under the first section of the Act of 1871, to question the latter's right or franchise so to do.

In the foregoing cases, where relief was afforded, it will be observed that each decision, from one aspect or another, turns on the theory of the nonexistence, under the attending circumstances, of a charter right to do the particular thing in question, the rule seeming to be that inquiry in a proceeding resting on the statute must bear some direct relation to the ascertainment of a charter power or right to commit the act complained of, and that restraint can be granted only on a finding of either the nonexistence of the power or its nonexistence for the purposes to which it is being put to the injury of the complainant. Any apparent inconsistencies in the language of our opinions, discussing the act, will be found to arise from a failure properly to apply this guiding principle, and not from a thought of departing therefrom.

In Windsor Glass Co. v. Carnegie Co., 204 Pa. 459, 463-4, we said: "The act is intended to enlarge and make clear the rights of individuals to inquire into the charter

franchises of corporations when asserted to their individual injury," adding: "it enables the private suitor to demand that the charter right to do the thing complained of shall be shown, but it does not......clothe the court at his instance with the Commonwealth's general powers of inquiry."

Inquiry under the Act of 1871 is not, however, confined to a simple investigation of the charter involved, to see whether it, in a general sense, confers the right claimed; for instance, here, the right of eminent domain. The question, in each case of the character of the one now before us, is as to the existence of the charter right, and, if found, then, is the corporation defendant attempting to exercise its franchise under circumstances authorized by law?—for it can possess the right only to that extent: Deemer v. Bells Run R. R. Co., 212 Pa. 491, 492-3.

When noncompliance with steps essential to the exercise of a charter power is shown, the assertion thereof will be enjoined, on the theory that the right to use the power exists only in conjunction, and upon compliance, with these essentials (see cases hereinbefore cited where injunctions were issued); but, in such instances, full relief under the act need not always be given when another and more appropriate remedy is at hand: see St. Clair Borough v. Tamaqua, etc., Co., 259 Pa. 462; Leiper v. Baltimore, etc., Co., 262 Pa. 328; Bethlehem C. W. Co. v. Bethlehem Borough, 253 Pa. 333; Klein-Logan Co. v. Duquesne Light Co., 261 Pa. 526; York Water Co. v. York, 250 Pa. 115; Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114.

Anyone having the right to raise the point may complain of departures from charter obligations to his special injury, and, if such departures are shown, he may obtain relief, under the statute, on the ground that defendant corporation has no franchise to commit the acts in question (Packard v. Thiel College, 209 Pa. 349, 352); but alleged invalidity, abandonment, termination or

forfeiture of a charter can be inquired into only by the
State: Curry v. Harmony Electric Co., 251 Pa. 344, 347;
Mountz v. Pittsburgh, B. & L. E. R. R. Co., 265 Pa. 67,
69; Williams v. D., L. & W. R. R. Co., 255 Pa. 133, 144;
Croyle v. Johnstown Water Co., 259 Pa. 484, 488. See
also the numerous cases cited in the notes to 2 Purdon's
Digest, page 1416 et seq.

The organic law requires corporations possessing the
right of eminent domain, in every instance of appropria-
tion of property, to enter a bond to secure damages; and
we have held that, under the Act of 1871, inquiry may be
made to ascertain and determine whether such a bond
has in fact been entered (Bly v. White Deer Mt. W. Co.,
197 Pa. 80, 91; Blauch v. Johnstown W. Co., 247 Pa.
71, 78); for the approval of the bond, in a condemnation
proceeding, involves an adjudication that all necessary
prerequisites have been complied with (Bland v. Tipton
Water Co., 222 Pa. 285, 292; Burkhard v. Pa. Water Co.,
234 Pa. 41 46, 48, 53); but see Bowers v. Citizens Water
Co., 162 Pa. 9, 11, where this court held that, so far as
the right of the landowner to commence proceedings is
concerned, it depends upon neither the approval of the
bond nor the making of a specific appropriation, if his
property is actually taken.

In a number of street railway company cases, referred
to in this opinion, inquiry was allowed to ascertain
whether municipal consent to the occupation of streets
had been given; but our decisions are put expressly on
the ground that, since such consent is demanded by the
Constitution, its requirement must be read into every
charter: Coatesville & D. St. Ry. Co. v. West Chester
Ry. Co., 206 Pa. 40, 44.

There is a line of water company cases which hold
that, in an equitable proceeding under the act we are
now considering, inquiry concerning the use to be made
of the water about to be condemned may be entered upon
(Bly v. White Deer Mt. Water Co., 197 Pa. 80, 99, 100);
but our most recent decisions along that line are to the

effect that, unless it appears the water is being condemned for the purpose of "directly supplying the same to the public in townships and municipalities other than the one which the company is authorized to supply," the mere fact of a purpose incidentally to supply persons outside the charter district, will not warrant judicial interference with the condemnation: Bland v. Tipton Water Co., 222 Pa. 285, 290; Mier v. Citizens Water Co., 250 Pa. 536, 540; Blauch v. Johnstown W. Co., 247 Pa. 71, 79. In our last utterance upon this subject, we said: "if the true purpose of the condemnation was to furnish a territory beyond the original charter limits, that is a matter to be inquired into by the State in appropriate proceedings, but not by a bill in equity under the Act of 1871, at the instance of a private person": Croyle v. Johnstown W. Co., 259 Pa. 484, 488. Such inquiry is permissible, however, in a proceeding like the one at bar, so far as it throws light on the necessity for the condemnation. That is to say, since the organic law and relevant Pennsylvania legislation, defining the franchises of water companies, confers on those concerns only the right to appropriate property necessary to their corporate wants, examination may be made concerning the district a corporation is authorized to serve, at least to the extent that this inquiry is helpful in determining the question of the necessity for appropriating the water in controversy in order to supply such territory, whatever its limits may be; in other words, inquiry may be made under the Act of 1871 to determine whether a particular condemnation is essential to the proper fulfillment of the defendant's lawful corporate purposes: Raystown W. P. Co. v. Brumbaugh, 246 Pa. 225, 228; Burkhard v. Pa. Water Co., 234 Pa. 41, 54.

Turning our attention more directly to the cases where relief under the act was refused: In Tibby Bros. Glass Co. v. Pa. R. R. Co., 219 Pa. 430, 432, 433, we held that an individual landowner had no standing to maintain a bill against a railroad company, to enjoin an appropri-

ation of his land, on the ground that the condemning corporation was constituted by a merger of parallel and competing lines, which merger violated the constitutional inhibition against such consolidations; but we expressly placed this decision on the ground that the organic law requires the question of fact—whether railroads are parallel or competing lines—to be decided by a jury. Many other cases may be cited where this court refused injunctions, either on the ground of the nonapplicability of the statute as a source of relief under the circumstances, or because the charter rights attacked, or power to do the thing complained of, sufficiently appeared; and, in the course of these opinions we repeatedly say, as to the purpose and meaning of the Act of 1871, that it does not give general jurisdiction to grant relief wherever private rights are injured or invaded by a corporation, but simply affords individuals the right to complain, and endows the courts with power to inquire and restrain, whenever it is alleged that private rights are being injured or invaded by a corporation claiming a franchise to do the acts in controversy; further, that in such instance the inquiry is limited to the question whether the corporation does in fact possess the right or franchise to do the act from which the alleged injury results, and, "if the power is found to exist in the corporation to do the act complained of, the authority of the court to interfere is at an end"; but these and all like statements should be read in connection with the particular facts in relation to which they are written, and the cases wherein they occur must be considered in conjunction with other decisions, hereinbefore noted, and what we state in this opinion concerning the extent of the power in question: for cases where injunctions were refused see Western Pa. R. R. Co.'s App., 104 Pa. 399; Pa. S. V. R. R. Co. v. Schuylkill Nav. Co., 167 Pa. 576; Pa. R. R. Co. v. Greensburg J. & P. St. Ry. Co., 176 Pa. 559; Becker v. Lebanon & Myerstown St. Ry. Co., 188 Pa. 484; Gaw v. Bristol & Bridgewater R.

R. Co., 196 Pa. 442; Olyphant S. D. v. Olyphant Boro., 196 Pa. 553; North Penna. R. R. Co. v. Inland Trac. Co.; 205 Pa. 579; Howley v. Central Valley R. R. Co., 213 Pa. 36, 39; Tibby B. G. Co. v. Pa. R. R. Co., 219 Pa. 430, 434; Myersdale & S. St. Ry. Co. v. P. & M. St. Ry. Co., 219 Pa. 558, 566; Andel v. Duquesne St. R. Co., 219 Pa. 635; Hannum v. Media, M., A. & C. Elec. Ry. Co., 221 Pa. 454, 462; Twelfth Street Market Co. v. P. & R. T. R. R. Co., 142 Pa. 580, 596; Vinton Colliery Co. v. Blacklick & Y. C. R. R. Co., 226 Pa. 131, 135; Blankenburg v. P. R. T. Co., 228 Pa. 338, 340; Burkhard v. Pa. Water Co., 234 Pa. 41; Blauch v. Johnstown Water Co., 247 Pa. 71, 79; Alexander v. Wilkes-Barre A. C. Co., 254 Pa. 1, 9; Williams v. D., L. & W. R. R. Co., 255 Pa. 133, 144; Mountz v. P., B. & L. E. R. R. Co., 265 Pa. 67, 70.

From the foregoing review it may be seen, both the actual words of the legislation before us and the decisions in point indicate that, in order to entitle one to the equitable remedy which the statute provides, defendant, when challenged, must have failed to show a charter power to do the act complained of, or it must be shown that something essential to the rightful exercise of the power sought to be asserted is lacking, or that some act has been committed which is so closely connected with defendant's right to exercise the power in question as in effect to constitute a charter prohibition against its assertion under the facts in the particular case; but, when any of these conditions appear, equitable relief is available, it always being understood, however, that the statute does not clothe the courts, at the instance of a private suitor, with the Commonwealth's general powers of inquiry, and that alleged invalidity, abandonment or termination of a charter can be inquired into by the State alone.

Another point to be remembered is that proceedings resting on the Act of 1871 are subject to the rules which govern equity practice; in this connection, we have held

that, notwithstanding the use of the imperative "shall" in the statute, an injunction will not be granted thereunder, unless a proper case is made out "in accordance with the principles of the practice of equity": Becker v. Lebanon & M. St. Ry. Co., 188 Pa. 484, 496; see also Myersdale & S. St. Ry. Co. v. P. & M. St. Ry. Co., 219 Pa. 558, 565, and authorities there cited.

All the decisions, which throw any light upon the subject of the scope of inquiry allowed in a proceeding such as the one at bar, have been examined by us and are here cited (not for present purposes only, but in the hope of furnishing a guide to the Act of 1871, for future use); with the aid which this somewhat elaborate consideration of the relevant authorities affords, we shall now dispose of the several grounds of complaint suggested by appellants.

Plaintiffs complain that defendant's answer shows it intends merely "an experimental appropriation of their land and water, reserving to itself the right to take, or not to take, after the damages shall have been ascertained." We agree with the court below that, when read as a whole, the answer means to assert simply an intention to proceed in a regular manner and not to go upon plaintiff's land, nor take any other steps, except as contemplated by the relevant acts of assembly; we see no merit in this complaint. Although, had it been made out as alleged, plaintiffs would have been entitled to an injunction; for, of course, no corporation has a franchise right to make an "experimental appropriation"; but an "anticipated violation of law" is not to be inferred: Hey v. Springfield Water Co., 207 Pa. 38, 44, 45.

It is claimed that the spring and stream proposed to be taken by defendant constitute a private water supply within the intent of the Act of April 29, 1874, P. L. 73, as amended by the Act of May 16, 1889, P. L. 226, which expressly withhold from water companies the right to appropriate private springs and water supplies. That the stream here in question does not constitute a "pri-

vate water supply" within the meaning of the term as used in these acts of assembly, may readily be seen by reading President Judge RICE's opinion on the subject, in Gring v. Sinking Spring Water Co., 7 Pa. Superior Ct. 63.

The next contention is that defendant, having made one appropriation in 1895, when it elected to take the water at a certain point, fully exercised all of its rights in the premises at that time and cannot now make a second election; but Burkhard v. Pa. Water Co., 234 Pa. 41, 49, 54, rules this point against appellants: see also Keller v. Riverton Con. W. Co., 34 Pa. Superior Ct. 301.

Another complaint is that "defendant's appropriation" is to enable it to furnish the water taken, "or part thereof," to the Wyomissing company, whose territory "is different from that of defendant company, though adjacent thereto.". The chancellor found that, "upon the acquisition on the part of the defendant company of the plant of the Wyomissing company, and the connection of the mains of the two companies, water of the Wyomissing company was used to make up deficiencies in the supply of the defendant company in its original territory, and also some of the water taken from the said Catherine Gring's land by the defendant company was and has continued to be, at least during parts of the year, furnished in the territory of the Wyomissing company," further that "the development and improvement of the territory *presently* served by defendant company" has created a need for "greater pressure" and an increase "in volume" of the water supply by the defendant company; and, on these findings, he concluded that "a fair legal necessity for the appropriation proposed" has been shown to exist "in the territory *presently* served by defendant company, including that of Wyomissing company taken over by defendant."

Defendant company leased the Wyomissing company July 2, 1907, and, under the law as it stood prior to the

Act of June 7, 1907, P. L. 455, the lessee would have become vested with all the rights of the lessor, to the same effect as though it had by purchase acquired the latter's franchise, including, perhaps, a right to supply the united districts and to condemn water for that purpose (Moore v. Chartiers Val. Water Co., 216 Pa. 457; Hey v. Springfield Water Co., 207 Pa. 38); this state of law would justify an inquiry into the necessities of the whole territory warranting the appropriation of plaintiff's property, subject of course to the rule that, in properly initiated proceedings, a resolution of the appropriating company, duly condemning the property about to be taken, is a prima facie warrant for so doing. Section 3 of the act just mentioned provides, however, (p. 457) that "no......transfer.......of the franchises and ......property......of any corporation......, formed for the supply of water to the public,......shall be valid until a certificate [—].......designating the river, stream, or other body of water, and, as near as may be, the points on the said river, stream, or other body of water, between which it is proposed to take or use water or water-power thereafter, and stipulating that the right heretofore existing, in either the corporation so purchasing or the corporation so selling, to take or use water or water-power from any river, stream, or other body of water, or portions thereof, not so designated, shall be and are thereby forfeited and surrendered and shall revert to this Commonwealth, [—] shall have been approved by a majority of the members of the Water Supply Commission of Pennsylvania and filed in the office of the secretary of the Commonwealth." The act in question provides further "that no such certificate shall be approved......until the corporation so purchasing shall have filed in the office of the Water Supply Commission......a written acceptance...... both of this act and of the act approved April thirteenth, one thousand nine hundred and five [P. L. 152], entitled 'an act providing that the right of eminent domain, as

respects the appropriation of streams, rivers, or waters, or the land covered thereby, shall not be exercised by water companies,......, agreeing to be subject to and bound by the provisions of both of said acts." (It may be noted, at this point, we have held the Act of 1905, mentioned in the Act of 1907, does not prevent the appropriation of land outside the limits of a stream, for reservoir purposes: see Brumbaugh v. Raystown W. P. Co., 254 Pa. 215, 218-19.)

The bill avers that "the contemplated appropriation is not necessary for the purposes of defendant company." Issue was joined on this averment of necessity, and the chancellor found, as we have already shown, that such necessity existed,—to obtain a greater pressure and volume of water for defendant company's corporate purposes,—in the *"territory presently served,"* that is, the joint district of the companies lessor and lessee, and also to meet the requirements of the state board of health, for the purification of the water in question; but, since these findings, and the conclusions of law in favor of defendant based thereon, were made without regard to the effect of the Act of 1907, which was not called to the attention of the court below, the record must be returned to that tribunal, so that it may again fix the case for hearing and afford the parties in interest an opportunity to show whether or not, at the time of the "transfer" of the franchise and property of the Wyomissing Water Company to defendant, the certificate called for by the Act of 1907, to validate the lease then made, was filed as required; and, in view of the court's findings on that point, to state, in addition to those on the present record, such other findings and conclusions as may be demanded by the facts developed and the effect which must be given to the Act of 1907, as the court below may view it.

If the chancellor finds that, when the lease of 1907 was made, defendant did in fact surrender or abridge in any degree its right of eminent domain, he will adjudge

the case in accordance with what he may determine to be the requirements of this situation; but, on the other hand, if he finds no such surrender was made, then the situation will have to be judged by the effect which that state of facts may have on defendant's right to condemn plaintiff's property, and this would call for an inquiry concerning the necessities of the district which it, defendant, would then have the legal right to serve.

When, in due course, the findings and conclusions, brought about by a reconsideration of the case along the lines just indicated, come before us, the several issues involved can be fully determined, but, on the present record, they are not all ripe for final decision; hence the decree entered will have to be set aside at least temporarily. In this connection, however, we must not be understood as prejudging, or intimating an opinion upon, any matter of controversy other than the particular points herein expressly decided. How far, if at all, these proceedings may be warranted and sustained under the Act of May 26, 1893, P. L. 158, authorizing water companies to acquire land to preserve their water from contamination, we leave for the court below to first determine on the controlling facts as they may appear at the rehearing of the case.

We have now passed upon every question that the pleadings in the court below, and the hereinbefore cited decisions under the Act of 1871, require us to determine; but, since the case must be returned with a procedendo, it seems wise to discuss several other matters of complaint.

The bill alleges that defendant proposes to put the stream in controversy under ground, thus depriving plaintiffs of free access to it for domestic and farming purposes; and this was shown at the trial. The chancellor finds, however, that "the method intended to be pursued by defendant company will not deprive plaintiffs of any substantial benefit of the stream as it now flows, but, by giving them pipe connections with the house,

barn, etc., plaintiffs will have practically as much and [as] convenient use of the water as they [at present] make of it"; and he concludes that "the contemplated method of treating the stream, from the point of the proposed appropriation, involves no forbidden deprivation of the use of the water by the owners of the land." It appears that the burying of the stream is for the purpose of meeting the requirements of the state board of health; and we agree with the court below that the method to be pursued by defendant company in using the water condemned is not a proper matter of inquiry in the present proceeding. If defendant's condemnation is finally affirmed, and it seeks to use the property appropriated in an unwarranted manner, and thus deprive plaintiffs of legal rights therein, the law provides ample remedies, as suggested in Greek C. Church v. Schkodowsky, 252 Pa. 597.

Finally, appellants claim that, because defendant "has not shown any action of its board of directors, declaring a necessity" for the present condemnation, it is "without the right to make the appropriation." In considering this contention, it may be noted that there is nothing in the water company acts similar to the provision found in the Act of March 17, 1869, P. L. 12, as to condemning land for railroad purposes, which specifically refers to the right to take being exercisable "whenever, in the opinion of the board of directors of the railroad company, a condemnation may be necessary for corporate purposes"; but "appropriation" means taking under the power of eminent domain,—not by simple purchase, a right which water companies also possess,—and, in Boalsburg Water Company v. State College Water Co., 240 Pa. 198, 209 (which is the only water company case we find mentioning the subject), this court said: "Of course there must be corporate action, which means the adoption of resolutions to condemn, without which there can be no adverse taking of the property of another."

While the case just cited holds that proper corporate action must precede an appropriation of land, and how it may be proved, the last is the point really involved; the opinion contains no ruling concerning the necessity for either averring such corporate action or requiring proof thereof in an equity case under the Act of 1871, and for the reasons we are about to state, these points are not now before us.

The present bill does not allege defendant failed to take necessary corporate action before proceeding with its condemnation, and the notes of testimony show that, up to the time of submitting requests for findings, the case was tried on the plan of impliedly conceding the usual prior corporate action and contending that this was not conclusive on the question of the necessity for appropriating plaintiff's property, but might be met by proofs on the part of the latter that no such necessity in fact existed. In other words, the case was conducted on the theory, not that defendant had omitted to pass the necessary preliminary resolution of the condemnation (which, it was stated at argument, had in fact been done) or had failed to aver or prove such corporate action, but on the theory that, admitting the existence of proper corporate action, this merely showed a prima facie right to make the appropriation, so far as the question of necessity is concerned, which necessity plaintiffs proposed to disprove; and this, we said in Boalsburg W. Co. v. State College W. Co., supra (p. 212), a plaintiff so situated might do.

While perhaps essential preliminary steps to the condemnation of another's property (such as a proper resolution of the board of directors) may not be impliedly waived, yet the existence thereof may be either expressly or impliedly admitted, and formal proof thus rendered unnecessary—which is this case, so far as the present equity proceedings are concerned; but, since the record must go back to the court below, we suggest the advisability of showing all relevant facts concerning the reso-

lution of defendant's board appropriating plaintiff's property.

The decree appealed from is set aside, and it is ordered that the record be returned to the court below for further proceedings in accord with the views expressed and rulings contained in this opinion; that tribunal to enter such decree as the law and facts require, considering the Act of June 7, 1907, P. L. 455, and the Act of May 26, 1893, P. L. 158, so far as they may be held to apply. The order for costs to await final decision of the case.