## The Beulah Anchorage of Reading et al. v. Dickinson et al.

*Corporations — Corporations of the first class — Election of officers — Notice—Validity.*

1. The election of officers of a corporation of the first class at a meeting held without sending notice of the time, place or purpose of the meeting to the regular members of the corporation is void.

*Corporations — Corporations of the first class — Purpose — Discretion to receive inmates.*

2. A corporation chartered for the purpose of "providing a home or refuge for homeless and friendless women and girls" may, in its discretion, select and classify, within the scope of its charter powers, the persons whom it will receive.

*Corporations—Election of officers—Validity of election—Quo warranto.*

3. Quo *warranto* is the appropriate remedy for contesting the validity of the election of the officers of a corporation.

*Corporations—Acts ultra vires—Right in Commonwealth to challenge corporate acts as ultra vires.*

4. The prerogative to challenge the acts of a corporation as *ultra vires* resides in the Commonwealth alone.

Bill and answer. C. P. Berks Co., Equity Docket, 1926, No. 1484.

*J. Milton Miller*, for plaintiffs.

*Walter B. Freed* and *John J. Kutz*, for defendants.

SCHAEFFER, P. J., Nov. 15, 1926.—1. The Beulah Anchorage of Reading, Pa., was duly incorporated on Dec. 9, 1907, as a corporation of the first class, for the purpose of "providing a home or refuge for homeless and friendless women and girls from funds to be secured by public subscriptions, donations or bequests, and the membership of said corporation is to consist of such contributors of One Dollar, or more, who shall desire to enroll their names as members."

2. Since the year 1907, the corporation has owned and maintained a home or institution, known as The Beulah Anchorage, in the City of Reading, Pa., for the purpose of carrying out the purposes of its charter.

3. Mary L. Landis, one of the plaintiffs, was the founder and one of the charter members of said corporation, and continued active, as an officer, in the management of said corporation until 1920.

4. About 1920 Mary L. Landis resigned as an officer of said corporation.

5. Said corporation has maintained its due corporate existence to the present time.

6. Since the severance of her connection with said corporation as an officer said Mary L. Landis has become dissatisfied with the conduct of the home maintained by said corporation.

7. On Feb. 12, 1926, and May 14, 1926, at the personal invitation of said Mary L. Landis, a number of individuals, few of whom had ever been members of the corporation known as The Beulah Anchorage of Reading, Pa., met at the private residence of said Mary L. Landis and undertook to elect members and officers of said corporation. The officers claiming to be so elected are among the plaintiffs in this bill.

8. No notices of the time, place or purpose of said meetings had been sent to the membership of said corporation.

9. On June 30, 1926, a committee of the people who, as a result of the meetings held at the residence of Mary L. Landis, called themselves members and officers of said corporation, visited the home maintained by the corporation

The Beulah Anchorage of Reading et al. *v*. Dickinson et al.

and demanded the right to inspect the books and home of the corporation, which was denied to them.

10. The officers of the corporation have recently stated that they would decline to accept unmarried expectant mothers for the purpose of delivery at the home of said corporation.

## Discussion.

This bill purports to have been brought by The Beulah Anchorage of Reading, Pa., a corporation, and nine individuals, who in the caption and body of the bill are designated as officers of said corporation. The defendants named in the bill are four individuals alleged to be in physical possession of the corporate seal and old minute-book of the corporation. The allegations of the bill are that Mary L. Landis and her associates solicited funds which were applied to the purchase, erection, etc., of the present property of the corporation; that for many years the buildings "were used to take care of fallen women and wayward girls in an attempt to give such inmates a chance to reform their habits, regain their health and become good citizens;" that, in 1920, Mary L. Landis, by reason of ill-health, "surrendered the Home to other parties," who conducted the work until the beginning of 1925; that, "for the past eighteen months, the parties in charge of said Home, through the efforts of the organization created in 1920, have been conducting the Home in a manner not in accordance with the charter and objects of the subscribers to the fund that paid for said property;" that the present managers procured boarding girls, who paid for their board and lodging, permitted some inmates to work for money, and "that at least half the inmates of the institution are not the kind of girls or women that were intended to be rescued from bad and wayward habits and turned into better walks of life." The prayers of the bill are that the defendants be required to surrender the seal and old minute-book to the plaintiffs, "who are the duly elected officers of the corporation plaintiff;" that "the defendants be ordered to permit the trustees and officers . . . to have free access to said Home at any and all times;" that the defendants be required to "submit to any and all directions of the officers and trustees, plaintiffs."

Upon the hearing there was evidence of two meetings of friends called together by Mrs. Landis by telephone at her home at which the officers, who are here as plaintiffs, claim to have been elected. Yet there was absolutely no attempt to show that the meetings were regular or special meetings held in accordance with the by-laws of the corporation, or that any notice of the time, place or purpose of the meetings had been sent to the regular members of the corporation. In fact, it nowhere appears that a single person in attendance was at the time of said meetings a member of the corporation. Said meetings were without any authority to bind or act for the corporation. Election by persons there present carried with it no legal right or authority whatsoever. Such conclusion is so evident that a citation of authorities is unnecessary.

If the plaintiffs desired to contest the validity of the election of the four individual defendants as officers of the corporation, *quo warranto* is the appropriate remedy: Bedford Springs Co. *v*. McMeen, 161 Pa. 639; Brower *v*. Kantner, 190 Pa. 182; Jenkins *v*. Baxter, 160 Pa. 199; Com. ex rel. *v*. Kelly, 287 Pa. 139.

Upon argument, counsel for the plaintiffs urged that the evidence disclosed that the Home was now being conducted in a manner not sanctioned by the "donors." Who the "donors," in addition to Mrs. Landis, are, does not appear.

Nor have we any evidence of the purposes intended by the donors except the purpose set forth in the charter of the corporation, to wit, "providing a home or refuge for friendless women and girls." There is no allegation that the property of the corporation has been diverted to a different purpose; the complaint seems to be that the Home does not admit, in addition to girls sent by the Juvenile Court and the health authorities, unmarried expectant mothers for the purpose of delivery. We cannot say that such refusal is *ultra vires*. It is unnecessary to decide whether the reception and care of maternity cases falls within the charter powers of this corporation; it is enough to point out that the corporation may, in its discretion, select and classify, within the scope of the powers granted by its charter, the persons whom it will receive. No particular person has a right to admission. It is nowhere alleged that the Home, as now conducted, is not a home or refuge for friendless women and girls. There are twenty-three such persons there now. It seems to us that the decision of the corporation not to mingle maternity cases with the cases of wayward girls is most proper. It has not been shown that the Home is equipped for obstetrical work, and surely it cannot offer as good service in such cases as can our splendid hospitals.

And it is to be noted that the corporation is not a party defendant. Its name does appear as a party plaintiff, but no authority to make the actual corporation a party plaintiff has either been alleged or shown. A decree against the four individuals here sued would be ineffectual to affect the policy of the Anchorage. Nor can the plaintiffs, by bill in equity, challenge the acts of the corporation as *ultra vires;* that prerogative resides in the Commonwealth alone: Curry v. Harmony Electric Co., 251 Pa. 344, 347; Gring v. Sinking Spring Water Co., 270 Pa. 232, 243.

### Conclusions of law.

1. The pretended election of members and officers of the corporation of The Beulah Anchorage of Reading, Pa., held at the residence of Mary L. Landis on Feb. 12, 1926, and May 14, 1926, is void and of no effect.

2. The bill shall be dismissed, at the cost of the plaintiffs.

And now, to wit, Nov. 15, 1926, the prothonotary is directed to enter a decree *nisi* in accordance with the foregoing decision, and forthwith to give notice thereof to the parties or their counsel of record *sec. reg.*

From Charles K. Derr, Reading, Pa.